# EXHIBIT "A"



Fourth Floor Stairs



Fourth Floor Stairs



Law library



Law library



Fourth Floor bathroom



Fourth Floor bathroom



Second Floor gender neutral bathroom



Second Floor gender neutral bathroom



Second floor jury assembly bathroom



Second floor jury assembly bathroom



Second Floor "accessible bathroom"



Second Floor "accessible bathroom"



Example of Third Floor Courtroom



Example of Third Floor Courtroom



False signage



Example of counsel tables



5th & 7th Floor badrorys



5th & 7th Floor Ballrooy



J CP door



J CP door

**EXHIBIT "B"**

ORIGINAL

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

CANER DEMIRAYAK,

Plaintiff.

-against-

CITY OF NEW YORK, NEW YORK CITY
DEPARTMENT OF CITYWIDE ADMINISTRATIVE
SERVICES, LISETTE CAMILO, RICK D.
CHANDLER P.E., IRA GLUCKMAN RA, NEW
YORK CITY DEPARTMENT OF BUILDINGS,
STATE OF NEW YORK, OFFICE OF COURT
ADMINISTRATION, & HON. RONALD YOUNKINS,

Defendants.

-------------------------------------------------------------------X

RECEIVED

OCT 2 5 2017

PRO SE OFFICE

Civil Action No.: CV17-5205

**AMENDED
CIVIL COMPLAINT**

*PLAINTIFF DEMANDS A
TRIAL BY JURY*

## I.  STATEMENT OF FEDERAL-QUESTION AND SUPPLEMENTAL JURISDICTION

1.      This action arises under 42 U.S.C. 12101, & 12182 (Title II of the Americans with Disabilities Act), 29 U.S.C. 701 & 794 (The Rehabilitation Act of 1973), and the Equal Protection Clause of the XIV Amendment to the United States Constitution.

2.      This action also arises under N.Y.S. Exec. L. Section 296(2)(a) (The New York State Human Rights Law), Section 8-107(4)(a) of the New York City Administrative Code (The New York City Humans Rights Law), and common law claims of intentional interference with contractual relationships, intentional infliction of emotion distress, and humiliation. The Court has valid supplemental jurisdiction over said claims pursuant to 28 USC 1367, as the claims are closely related to the federal-question claims brought pursuant to Title II of the Americans with Disabilities Act and The Rehabilitation Act of 1973.

3.      As per 42 U.S.C. 12202, New York State, New York City, and their subdivisions/agencies are not immune from this action pursuant to the Eleventh Amendment of the Constitution of the United States.

4.      The defendants are also not immune from suit pursuant to the Rehabilitation Act of 1973 based upon their receipt of federal funding. Pursuant to the New York State Unified Court System Budget for 2016-17, approximately $13.5 million in federal funds have been accepted. See **Exhibit "A,"** for a copy of the relevant portions of the NYSUCS Budget of 2016-17. As such, the defendants have consented to suit under section 504.

5.     Moreover, the defendants are not immune from suit under either of the federal statutes inasmuch as their conduct violates the plaintiff's Equal Protection rights under section 5 of the 14th Amendment.

6.     Finally, this suit falls within the confines of the <u>Ex Parte Young</u> exception to suits seeking prospective injunctive relief against government officials sued in their officially capacity, i.e., defendants Lisette Camilo, Ira Gluckman, Rick Chandler, and Ronald Younkins. Thus, there is no immunity from that part of the suit seeking injunctive relief pursuant to the ADA and Rehabilitation Act.

## II.   STANDING

7.     Plaintiff's instant complaint raises a valid and ripe case or controversy as per Article 3 Section 2 of the United States Constitution.

8.     As indicated herein and below, plaintiff has been injured in the past under the ADA, Rehabilitation Act, State and City statutes, and common law claims on August 17, 2016, October 2016, November 15, 2016, on December 2 and 12, 2016, January 19 and 27, 2017, July 20, 2017, August 4, 11, and 16, 2017, September 7, 11, 25, 26, and 27, 2017, and October 4, 5, and 16, 2017.

9.     This discriminatory treatment continues to occur and has continued to occur even after the suit was commenced on September 5, 2017. Plaintiff intends to and will continue to return to the court building at 360 Adams Street on a weekly basis. Furthermore, the court can redress plaintiff's injury by a favorable decision, thereby ordering the defendants to, *inter alia*, remove architectural barriers.

## III.   THE PARTIES INVOLVED

### a.   THE PLAINTIFF

10.     The plaintiff, CANER DEMIRAYAK, is a resident of Nassau County, New York. Plaintiff is an attorney admitted to practice law in the State of New York. Plaintiff practices personal injury law in Kings County five days per week. Plaintiff is proceeding *pro se* as well as on behalf of all other similarly situated persons with disabilities who require the use of a wheelchair. However, this is not a class action suit.

11.     Plaintiff is a person with a qualified disability in accordance with the Americans With Disabilities Act, Rehabilitation Act, and New York State and City Human Rights Laws. Specifically, plaintiff suffers from Becker's Muscular Dystrophy, a muscle wasting disease, which has confined the plaintiff to a motorized wheelchair. Plaintiff uses a motorized wheelchair everyday and is unable to ambulate without the assistance of same.

### b. THE DEFENDANTS

12. The defendant, CITY OF NEW YORK, is a municipal entity duly formed under the laws of the State of New York. The CITY OF NEW YORK is the current owner of the building located at 360 Adams Street, Brooklyn, New York. Upon information and belief, the CITY OF NEW YORK receives federal financial assistance.

13. The defendant, NEW YORK CITY DEPARTMENT OF CITYWIDE ADMINSTRATIVE SERVICES, is an agency/entity/sub-part of the City of New York and is responsible for the management, oversight, and administration of buildings owned by the City of New York, including signing, approving, and submitting construction/work permits for City owned buildings.

14. The defendant, LISETTE CAMILO, is the Commissioner of the New York City Department of Citywide Administrative Services and is responsible for overseeing all actions and operations of the Department of Citywide Administrative Services. This defendant is being sued in her official capacity as Commissioner.

15. The defendant, RICK D. CHANDLER P.E., is the Commissioner of the New York City Department of Buildings. Defendant, RICK D. CHANDLER P.E., is responsible for overseeing all operations and planning of the New York City Department of Buildings. This defendant is being sued in his official capacity as Commissioner.

16. The defendant, IRA GLUCKMAN RA, is the Kings County Borough Commissioner of the New York City Department of Buildings. Defendant, IRA GLUCKMAN, RA is responsible for overseeing all operations and planning of City Buildings Located in Kings County on behalf of the New York City Department of Buildings. This defendant is being sued in his official capacity as Borough Commissioner.

17. The defendant, NEW YORK CITY DEPARTMENT OF BUILDINGS, is an agency/entity/sub-part of the City of New York, duly formed under the laws of the State and City of New York. The NEW YORK CITY DEPARTMENT OF BUILDINGS, *inter alia*, is responsible for approving construction permits, and ensuring that proposed work is in compliance with all applicable laws, including the Americans with Disabilities Act. Upon information and belief, the NEW YORK CITY DEPARTMENT OF BUILDINGS receives federal financial assistance.

18. The defendant, STATE OF NEW YORK, is a governmental entity subject to the requirements of Title II of the Americans with Disabilities Act. It is vicariously responsible for the actions and omissions of its agents/employees associated with the Office of Court Administration. Upon information and belief, the STATE OF NEW YORK receives federal financial assistance.

19. The defendant, OFFICE OF COURT ADMINISTRATION, is an agency/entity/sub-part of the State of New York, duly formed under the laws of the State.

The OFFICE OF COURT ADMINSTRATION is responsible for the administration and oversight of the State, County, and City courthouses, including, ensuring that the courthouses are maintained and operated in compliance with all applicable laws. Upon information and belief, the OFFICE OF COURT ADMINSTRATION receives federal financial assistance.

20.     The defendant, HON. RONALD YOUNKINS, is the Executive Director and Chief of Operations of the Office of Court Administration. HON. RONALD YOUNKINS is responsible for the day-to-day oversight of the courthouses maintained by the Office of Court Administration, including, ensuring that the courthouses are maintained and operated in compliance with all applicable laws. This defendant is being sued in his official capacity as Executive Director.

## IV.   STATEMENT OF FACTS APPLICABLE TO ALL PARTIES AND CAUSES OF ACTION

21.     The Kings County, Supreme Court building is located at 360 Adams Street, Brooklyn, New York. This building is owned by the CITY OF NEW YORK and managed/maintained by the NEW YORK CITY DEPARTMENT OF CITYWIDE ADMINSTRATIVE SERVICES, as per the information filed with the Department of Buildings.

22.     The initial Certificate of Occupancy (hereinafter "CO") for the building located at 360 Adams Street, was issued on October 1, 1964. The CO classified the building as holding occupancy for a Supreme Court Building. The initial CO listed the building as including twelve (12) floors, two (2) penthouse levels, a cellar, and a ground floor. Thus, the CO listed 360 Adams Street as a public building. The CO does not list the building as a landmark and it has no grandfather status.

23.     On May 31, 1974, the second CO was issued for the building at 360 Adams Street. The CO included a certification that the building "conforms substantially to...the requirements of all applicable laws, rules, and resolutions for the uses and occupancy specified herein." However, this second CO was issued *after* the Rehabilitation Act of 1973 was enacted.

24.     On the New York City Department of Buildings website list of COs, there is an entry indicating that under job number 310319679, "None issued or no image available."

25.     A review of job number 310319679, makes clear that the City applied for a construction permit, with the following description: "Conversion and Renovation of 2nd Floor Assembly Space and Removal of Detention Cells on 9th Floor – Architectural Work – Amended CO to be Obtained." The permit application lists an alteration type 1, architectural change (OT) and a change in occupancy/use.

26.     According to the permit application, the listed cost of the "renovation" is $3,328,000. Although, the job permit required a change in the CO and substantial architectural changes exceeding three million dollars, the permit includes a notation that the job is an "alteration but not a substantial alteration." The cost affidavit indicated that the job would entail demolishing the existing partitions and constructing new partitions and installing and finishing floors.

27.     Upon personal knowledge of viewing the 2nd and 9th floors, and the areas, which were renovated first hand, it is clear that the renovations do constitute substantial alterations. Moreover, the cost of $3.3 million dollars and the fact that the renovations took more than two years to complete makes same inherently substantial. The City listed "not a substantial alteration" in an attempt to avoid and conceal compliance with all applicable rules prohibiting the failure to make a building wheelchair accessible after substantial alterations.

28.     Moreover, the absence of the amended CO for this job on the NYC Department of Buildings website, is designed to conceal the defendants' purposeful violation of the disability laws. Indeed, a CO may have never been issued because the alterations violated the disability laws and a required compliance certification may not have been able to be submitted in good faith, honesty, and fair dealing.

29.     Indeed, on July 20, 2012, the plans for the job listed above were required to be revised/amended with respect to the door swings to meet accessibility concerns. See Exhibit "B," for a copy of the document indicating changes to the plans due to accessibility concerns. Thus, clearly the job plans themselves did not comply with the disability laws, and the City, by making such revisions, admits that 360 Adams Street is subject to the disability laws.

30.     The mandatory change to the plans was ordered AFTER an application was made for a new certificate of occupancy. The CO application, dated June 20, 2012, included a certification that the plans and construction complied with all applicable laws. Clearly, this was a misrepresentation, as the CO application was not approved as per the July 20, 2012 mandatory revision.

31.     Also, upon personal knowledge, the renovation of the 2nd floor only included creating a wheelchair accessible WOMEN's bathroom. The MEN's bathroom was not modified, nor was one installed on the 2nd floor. Indeed, the MEN's bathroom on the 2nd floor can be entered with a wheelchair. However, the stall is not large enough to accommodate a wheelchair. This is the same fact on the 3rd, 4th, 6th, 7th, 8th, 9th, 10th, 11th, and 12th floors. There is a wheelchair accessible stall on the 5th floor in the MEN's bathroom, but on December 2, 2016, when the plaintiff personally went there, there as a garbage bag and tape around the toilet.

32.     Strangely, based upon personal knowledge, there are signs located on each floor of the courthouse indicating that an accessible bathroom is present. However, upon entering the bathrooms, with the exception of the 2nd and 5th floor, there are NO

wheelchair accessible stalls. The presence of these signs is again a purposeful attempt at concealing the defendants' violations of the disability laws.

33.    With respect to the second floor, the Jury Coordinating Part courtroom was, for some reason, not part of the renovations. Instead same was left blatantly inaccessible for wheelchairs. A person in a wheelchair who would have to conference a case with the Presiding JCP Justice is unable to get to the conference room. The plaintiff has experienced this first hand at least 5 times and will continue to experience same as he is assigned to cases in JCP.

34.    With respect to other areas in the Courthouse, various courtrooms on the 3rd, 4th, 5th, 6th, 7th, 8th, 9th, 10th, 11th, and 12th floor are not accessible for wheelchairs. Specifically, based upon personal knowledge, the space between the benches and the bar of the courtroom is not wide enough for wheelchairs to fit through, thereby denying an accessible path of travel to a place of public accommodation. The plaintiff has experienced this first hand at least 12 times and will continue to experience same as he is assigned to different judges pursuant to the Individual Assignment system.

35.    Based upon personal knowledge, the majority of doors that members of the public must egress through to enter and exit the courtrooms are not wheelchair accessible.

36.    Based upon personal knowledge, several desks, tables, and attorney's tables in the courtrooms do not provide the required space under the table.

37.    Based upon personal knowledge, the path of travel in the majority of courtrooms is not accessible.

38.    Based upon personal knowledge, there is no access to courtroom 423 as there is a set of 8 to 9 steps without any other path of travel therein.

39.    Based upon personal knowledge, there is no access to the law library on the third floor since there is a set of 10-12 steps without any other path of travel therein.

a.    SPECIFIC DISCRIMINATORY INCIDENTS

40.    On August 17, 2016, the plaintiff was sent to a Judge on the third floor so as to conference a case and enter into a summary jury trial agreement. The conference was supposed to be held in the Judge's chambers on the third floor, which was not handicapped accessible. Thus, the plaintiff was made to wait and then the conference was held in the hallway on a bench outside of the Judge's chambers.

41.    In October 2016, the plaintiff was assigned to orally argue liability and threshold motions before a Judge on the third floor of 360 Adams Street. The Judge is not named for fear or reprisal or retaliation. When the plaintiff entered the courtroom it

became clear that there was insufficient space for a wheelchair to fit between the first bench and the bar. The plaintiff attempted to pass through same, but was unable to.

42.    The undersigned's wheelchair is 24 inches wide, one of the smallest chairs available. When the undersigned attempted and failed to pass through that area to reach the clerk and to hand up Reply papers, the clerk yelled that the plaintiff should go against the wall because he is blocking everyone else from getting through.

43.    At no point did the clerk or any employee or agent of the defendants ask the plaintiff if he needed assistance or provide an reasonable accommodation. Since the Judge's part rules required that all papers be handed up before the call of the calendar, the plaintiff again tried to get the attention of the clerk. However, the clerk yelled that I should go against the wall again.

44.    When the calendar was first called one of plaintiff's motions was marked second call. During the second call, the Judge on the bench stated she was adjourning the motion because she did not receive the Reply papers. The plaintiff responded that he was unable to hand the papers in because the courtroom was inaccessible and none of her staff provided a reasonable accommodation or assisted plaintiff in giving the papers up.

45.    The Judge responded, I don't care, in my part I must read all the papers. All of this transpired in a courtroom full of 40-50 other attorneys who observed this conduct. The disregard and actions caused the plaintiff to become severely distressed. As plaintiff left the courtroom, the emotional distress made him yell out that it is not his fault the courtroom is not accessible and felt extremely distressed, embarrassed, and humiliated for the remainder of the day.

46.    When the undersigned returned to his law firm that day, he requested to never be sent to that Judge's courtroom again, and the firm agreed. However, any one of the plaintiff's cases could very well be assigned to said judge, resulting in even more emotional distress.

47.    On November 15, 2016, the plaintiff tried the summary jury trial case mentioned above in paragraph 40, in a courtroom on the fourth floor. The plaintiff had a co-counsel for another client and we tried the case together. Of note, and with reference to the Equal Protection requirement for "similarly situated persons," plaintiff's co-counsel was an attorney *not* in a wheelchair. However, the plaintiff was extremely similar to this co-counsel, and performed all of the work in the trial, as any other lawyer would. Co-counsel only spoke for 5 minutes in the entire 1 day long trial. Plaintiff did *everything* else. During this trial plaintiff had a difficult time maneuvering around the courtroom. There was insufficient space under the lawyer tables; it was tough to move around and effectively argue before the jury.

48.    On December 2, 2016, the plaintiff was scheduled to begin selecting a jury at 10:00 a.m. Plaintiff entered the courthouse at approximately 9:15 a.m., and wanted to use the bathroom before selecting the jury. The plaintiff went to the 2nd floor MEN's

bathroom and attempted to enter the toilet. While doing so the plaintiff realized that the stall was so small that the door would not close. At the same time plaintiff realized that anyone in that bathroom could be part of the jury pool to be selected. Plaintiff faced severe embarrassment, humiliation and emotional distress in his inability to use the 2nd floor bathroom.

49.     As such, plaintiff proceeded to the information desk and asked an Officer if there were any accessible bathrooms. An unknown woman standing nearby looked at plaintiff in shock while he was speaking with the Officer. The plaintiff was advised that all of the floors should have accessible bathrooms.

50.     Thus, the plaintiff proceeded to the fourth floor and saw a sign indicating an accessible bathroom. However, upon entering the bathroom it was evident there were no accessible stalls.

51.     As such, the plaintiff approached an Officer at the desk and again inquired regarding accessible bathrooms. There were other persons nearby and they all looked shocked as I was speaking with the Officer. The Officer advised he had confirmation that the 5th floor MEN's room was made accessible and that the 9th floor WOMEN's room was made accessible.

52.     The plaintiff then proceeded to the 5th floor bathroom. Upon entering the bathroom, the stall was accessible, but the toilet was covered in black garbage bags and tape, rendering same unusable.

53.     By this time, the plaintiff had to return to JCP for the calendar call and feared he would have to abruptly leave during jury select to find a bathroom. However, the plaintiff was never able to use the bathroom that day during his time in the Kings County, Supreme Court.

54.     Right before the calendar call, the plaintiff inquired as to how he would get over the 6-8 inch step in the JCP part near the Judge's conference room. The clerk advised he is not aware of any other way in and that the Judge might have to come out. The uncertainty and the fact that several other attorneys from the plaintiff's office were present greatly distressed, embarrassed, and humiliated the plaintiff.

55.     On January 19, 2017, the plaintiff tried a case on the third floor. This courtroom was especially difficult to manever in. Each time the plaintiff wanted to move around in the courtroom, every person had to stand up and move out of the way. Further, the lawyer tables had insufficient space for wheelchairs. The plaintiff often tried to move around during the trial, but there was no room to do so. During this trial the plaintiff wanted to speak with his independent eyewitness and client, but could not due to the insufficient space in the courtroom. Thus, when the plaintiff called these two individuals as witnesses, he was actually unsure if they were in the courtroom or outside waiting.

56.     On January 27, 2017, the plaintiff tried a case on the fourth floor. This courtroom made it very difficult for the plaintiff to get around and at one point plaintiff knocked into the podium and it fell over, making a loud noise in front of the jury. This was an especially heated trial because plaintiff's adversary attorney made comments to the jury during select and opening statement to "disregard the plaintiff's wheelchair as this case is not about him." Like the other courtrooms, there was insufficient space under the lawyer tables.

57.     On July 20, 2017, the plaintiff, while waiting to be assigned a trial judge in JCP, proceeded to the law library on the third floor. It was the plaintiff's first time attempting to access the library. When the plaintiff entered the doorway near the law library he noticed the library was in a lower floor with a set of stairs. When he spoke with the court employee at the desk of the library, plaintiff was advised there was no way to get into the library with a wheelchair. An unknown person standing nearby then shouted, "Damn that sucks!" Feeling extremely embarrassed, distressed and humiliated, the plaintiff went back to the lawyer's lounge and was unable to review his notes for trial in the quiet of a library.

58.     On or about August 4 and August 11, 2017, plaintiff was assigned motions in a courtroom on the third floor. The courtroom is extremely small and there was not even enough room for persons ambulating without wheelchairs. Plaintiff was scheduled to argue a motion on August 4, 2017. When the case was called the plaintiff had to loudly to state to a courtroom full of other attorneys to "clear out! I cannot get through unless everyone moves from the front row." Luckily, plaintiff's wheelchair was small enough to fit through the narrow bench, which is not ADA compliant. When plaintiff made it to the lawyer's table in the well of the courtroom, it was clear the table was not accessible as there was no sufficient space under same. This was extremely embarrassing, distressing and humiliating for the plaintiff.

59.     On August 16, 2017, the plaintiff desired to enter courtroom 423 to observe a jury trial that was being conducted by a colleague. While walking towards the courtroom the plaintiff noticed a set of 8 or 9 steps. It quickly became clear there was no access to the courtroom. Plaintiff's colleague and other persons overhearing the situation asked if there was anything they could do. Feeling very embarrassed, distressed and humiliated, the plaintiff advised he would just go somewhere else, and lost the opportunity to observe the trial.

60.     On or about September 7, 2017, the Court installed a new sign on several walls in the courthouse stating that there were accessible bathrooms on the 4th floor. However, upon personal knowledge, there is no such accessible bathroom.

61.     On September 11, 2017 the plaintiff conducted jury select and a trial in a courtroom located on the fourth floor. In this courtroom, the lawyer tables did not have sufficient space underneath to accommodate a wheelchair and the paths of travel in the room were very narrow and made it extremely difficult for the plaintiff to get around.

62.     On September 25, 2017 after picking a jury the plaintiff was assigned to trial to a judge in the aforementioned courtroom 423, i.e., the courtroom up the staircase. The plaintiff had his client with him and realized he could not get to the courtroom. The adversary attorneys went up the stairs and spoke with the court staff as the plaintiff and his client waited. This was extremely embarrassing after the plaintiff had prepared his client for trial several times before September 25, 2017. The Court wanted to reassign the plaintiff to a different judge. However, at plaintiff's insistence of fair and random assignment of judges, the court decided to move the judge in room 423 to a different, yet still barely accessible courtroom on the fourth floor. After the trial ended on September 27, 2017, the plaintiff's client questioned whether we had lost the case because plaintiff's disability required a change in courtrooms and if that inconvenienced court staff.

63.     On October 4, 2017, while picking a jury on the second floor, the plaintiff tried to use the bathroom. However, upon entry it was clear that the, wheelchair stall was "out of order." This stall is still not built to ADA design standards, but the plaintiff's wheelchair can fit, barely. The stall was "out of order" due to the placement of two lines of duct tape on the door and a garbage bag around the toilet.

64.     On October 5, 2017, while trying the case, the same bathroom stall was still "out of order." At plaintiff's complaint to the ADA Liaison for Kings County, Supreme Court, he was told that only the 7th Floor bathroom was working at the time.

65.     On October 11, 2017, the aforementioned second floor bathroom was still out of order. Thus, when the plaintiff sent an e-mail to the ADA Liaison while in Court through his phone he received a response from the Commanding Court officer in charge. The responding e-mail indicated that she would request expedited repairs to the bathroom The e-mail also indicated that there was a wheelchair accessible stall in the jury assembly room on the second floor. However, when the plaintiff went to the jury assembly bathroom, it was clear that there is no accessible stall in such bathroom.

66.     On October 16, 2017, the plaintiff commenced a trial on the fourth floor and the courtroom was barely accessible. There was insufficient space under the lawyer tables, the path of travel in and out of the well was insufficient, and, during each side bar, the judge had to come down off the bench because the judge's seat was too high for a person in a wheelchair to participate in a sidebar. Also, during the trial the plaintiff had an extremely difficult time maneuvering around the courtroom.

67.     Inasmuch as the above mentioned incidents are of a continuing nature, the plaintiff reserves the right to further amend the complaint as new incidents arise during the pendency of this lawsuit. It is absolutely certain that more issues will arise.

68.     The plaintiff does not specifically list other courtroom numbers, judges, court attorneys, or part clerks involved due to fear of reprisal and retaliation. However, detailed information regarding same will be submitted to the assigned Judge in this federal action, confidentially and *in camera*, if same is required. It is noted that any such reprisal and retaliation is prohibited by 42 U.S.C. 12203(a) & (b), and plaintiff reserves

the right to add claims for same should any reprisal or retaliation arise during the litigation of this matter.

## AS AND FOR A FIRST CAUSE OF ACTION –
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

**V.    THE CITY OF NEW YORK'S FAILURE AND THE STATE OFFICE OF COURT ADMINISTRATION'S FAILURE TO MAKE THE COURTHOUSE LOCATED AT 360 ADAMS STREET, BROOKLYN, NEW YORK, WHEELCHAIR ACCESSIBLE, DESPITE SUBSTANTIAL ALTERATIONS, VIOLATES THE FEDERAL AMERICANS WITH DISABILITIES ACT (HEREINAFTER "ADA")**

69.    Plaintiff repeats and realleges those allegations of the complaint marked and designated herein as paragraphs "1" through "68" with the same force and effect as if herein set forth at length and further alleges that:

70.    Pursuant to 42 U.S.C. 12182, "No individual shall be discriminated against on the basis of disability in the full enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation."

71.    It is deemed discriminatory to afford an individual on the basis of disability with the opportunity to participate in or benefit from he goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation that is (1) not equal to that afforded to others or (2) different or separate from that afforded to others.

72.    It is also discriminatory for a public entity to (1) fail to remove architectural barriers that are structural in nature, in existing facilities, where such removal is readily achievable, (2) fail to take such steps as may be necessary to ensure no individual with a disability is excluded, denied services, segregated, or otherwise treated differently from other individuals because of the absence of auxiliary aids or services, (3) failure to make reasonable modifications in the policies, practices or procedures of the public entity, or (4) failing to use alternative methods to avoid discrimination when all other options are not readily achievable.

73.    In removing structural/architectural barriers, a public entity is required to conform its construction to the ADA Design Standards, promulgated by the Department of Justice. The most current design standards were issued in 2010.

74.    With respect to alterations to an existing facility, it is unlawful discrimination to fail to "[M]ake alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs.

75.    Moreover, it is unlawful and discriminatory for a public entity to undertake an "alteration that affects or could affect usability of or access to an area of the

facility containing a primary function, without also making the alterations in such a manner that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities where such alterations to the path of travel or the bathrooms, telephones, and drinking fountains serving the altered area."

76.     Upon information and belief, the defendants' renovation of the second and ninth floor of 360 Adams Street was discriminatory in that it failed to ensure that the renovations complied with the ADA. Being that the renovations were substantial, the defendants have opened the door and are now required to REMOVE ANY AND ALL STRUCTURAL AND ARCHITECTURAL BARRIERS within the entirety of 360 Adams Street. Specifically, the renovations to the second floor affects each and every part of the building, as the centralized calendar control part and jury coordinating part are located on the second floor. Said parts result in cases being assigned out to random judges on random floors, any of which, the plaintiff may be assigned to. This is certain.

77.     As such, plaintiff demands injunctive and monetary relief against the defendants in accordance with their violation of the ADA.

### AS AND FOR A SECOND CAUSE OF ACTION – VIOLATION OF THE REHABILITATION ACT

**VI.     THE CITY OF NEW YORK'S FAILURE AND THE STATE OF NEW YORK'S OFFICE OF COURT ADMINISTRATION'S FAILURE TO MAKE THE COURTHOUSE LOCATED AT 360 ADAMS STREET, BROOKLYN, NEW YORK, WHEELCHAIR ACCESSIBLE, VIOLATES SECTION 504 OF THE REHABILITATION ACT (HEREINAFTER "504")**

78.     Plaintiff repeats and realleges those allegations of the complaint marked and designated herein as paragraphs "1" through "77" with the same force and effect as if herein set forth at length and further alleges that:

79.     Pursuant to 29 U.S.C. 794, "No otherwise qualified individual with a disability…shall solely by reason of…his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

80.     Upon information and belief defendants, CITY OF NEW YORK and STATE OF NEW YORK, violated 504, by approving a certificate of occupancy in 1974, which was not in compliance with 504. The Unified Court System and the defendants receive federal funding.

81.     The 1974 CO is still in effect as, upon information and belief, the defendants have been unable to have an amended CO approved, since at least 2012. Thus, this is a continuing violation of 504.

82.     As such, plaintiff demands injunctive and monetary relief against the defendants in accordance with their violation of 504.

## AS AND FOR A THIRD CAUSE OF ACTION – VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE XIV AMENDMENT TO THE UNITED STATES CONSTITUTION

**VII.   THE CITY OF NEW YORK'S FAILURE AND THE STATE OF NEW YORK'S OFFICE OF COURT ADMINISTRATION'S FAILURE TO MAKE THE COURTHOUSE LOCATED AT 360 ADAMS STREET, BROOKLYN, NEW YORK, WHEELCHAIR ACCESSIBLE, VIOLATES THE EQUAL PROTECTION CLAUSE OF THE XIV AMENDMENT TO THE UNITED STATES CONSTITUTION (HEREINAFTER "EQUAL PROTECTION")**

83.     Plaintiff repeats and realleges those allegations of the complaint marked and designated herein as paragraphs "1" through "82" with the same force and effect as if herein set forth at length and further alleges that:

84.     Pursuant to Section 1 of the XIV Amendment: "No state shall…deny to any person within its jurisdiction the equal protection of the laws.

85.     Plaintiff, a fully-fledged attorney in a wheelchair, has been intentionally treated differently from other lawyers, that are similarly situated, and there is no rational basis for the different treatment.

86.     There is an extremely high degree of similarity between plaintiff and other fellow lawyers practicing in the courthouse at 360 Adams Street. Plaintiff performs each and every same task as any other lawyer. Plaintiff travels to court independently, attends calendar calls, participates in court conferences, argues motions, participates in hearings, selects juries, and conducts all aspects of full-blown trials. Plaintiff even transports/carries any and all required legal papers. Plaintiff is not given any special treatment or any less obligations/responsibilities that other lawyers, all of whom are similarly situated to the plaintiff.

87.     As such, no rational person could regard the circumstances of plaintiff to differ from those of a comparator fellow lawyer to a degree that would justify the different treatment on the basis of a legitimate government policy; there is no legitimate policy warranting the disparate treatment of an attorney in a wheelchair. Further, the similarity in circumstances of plaintiff and fellow lawyers, as indicated above and herein, are sufficient to exclude the possibility of any mistake by the defendants.

88.     Finally, plaintiff has been treated differently from other similarly situated lawyers based on the defendants intentional and/or purposeful discrimination by failing to remove architectural barriers, not providing meaningful access and not providing sufficient/proper reasonable accommodations.

89.     Plaintiff thus, alleges that the defendants have denied the plaintiff equal protection of the laws as described more fully herein. As such, plaintiff demands injunctive and monetary relief against the defendants in accordance with the violation of plaintiff's Equal Protection rights.

### AS AND FOR A FOURTH CAUSE OF ACTION – VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW

**VIII.   THE CITY OF NEW YORK'S FAILURE AND THE STATE OF NEW YORK'S OFFICE OF COURT ADMINISTRATION'S FAILURE TO MAKE THE COURTHOUSE LOCATED AT 360 ADAMS STREET, BROOKLYN, NEW YORK, WHEELCHAIR ACCESSIBLE, VIOLATES SECTION 296(2)(A) OF THE NEW YORK STATE HUMAN RIGHTS LAW (HEREINAFTER "STATE HRL")**

90.     Plaintiff repeats and realleges those allegations of the complaint marked and designated herein as paragraphs "1" through "89" with the same force and effect as if herein set forth at length and further alleges that:

91.     Pursuant to section 296(2)(a) of the State HRL, "It shall be an unlawful discriminatory practice for any person…manager…agent or employee of any place of accommodation because of the disability of any person directly or indirectly to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities, or privileges therefor…or that the patronage or custom threat…of having a disability is unwelcome, objectionable, or not acceptable, desired or solicited."

92.     Discriminatory practices under the State HRL include (1) a refusal to remove architectural barriers in exiting facilities where such removal is readily achievable, (2) refusal to make reasonable modifications in policies, practices or procedures when same are necessary to avoid discrimination and (3) refusal to take such steps as are necessary to ensure that no individual with a disability is excluded or denied services because of the presence of auxiliary aids and services.

93.     It is submitted that the defendants in the continued operation of 360 Adams Street and refusal to remove architectural barriers violates the State HRL. Indeed, the continued failure to remove such barriers presents the view that the defendants feel that having a disability is unwelcome, objectionable, or not acceptable, desired or solicited in the practice of law in general and in 360 Adams Street.

94.     As such, plaintiff demands injunctive and monetary relief against the defendants in accordance with their violation of the State HRL.

## AS AND FOR A FIFTH CAUSE OF ACTION – VIOLATION OF THE
## NEW YORK CITY HUMAN RIGHTS LAW

**IX.  THE CITY OF NEW YORK'S FAILURE AND THE STATE OF NEW YORK'S OFFICE OF COURT ADMINISTRATION'S FAILURE TO MAKE THE COURTHOUSE LOCATED AT 360 ADAMS STREET, BROOKLYN, NEW YORK, WHEELCHAIR ACCESSIBLE, VIOLATES SECTION 8-107(4)(A) OF THE NEW YORK CITY HUMAN RIGHTS LAW (HEREINAFTER "CITY HRL")**

95.  Plaintiff repeats and realleges those allegations of the complaint marked and designated herein as paragraphs "1" through "94" with the same force and effect as if herein set forth at length and further alleges that:

96.  Pursuant to section 8-107(4)(a) of the City HRL, "It shall be an unlawful discriminatory practice for any person…manager…agent or employee of any place of accommodation because of the disability of any person directly or indirectly to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities, or privileges therefor…or that the patronage or custom threat…of having a disability is unwelcome, objectionable, or not acceptable, desired or solicited.

97.  It is submitted that the defendants in the continued operation of 360 Adams Street and refusal to remove architectural barriers violates the City HRL. Indeed, the continued failure to remove such barriers presents the view that the defendants feel that having a disability is unwelcome, objectionable, or not acceptable, desired or solicited in the practice of law in general and in 360 Adams Street.

98.  The required Notice upon the City Commission on Human Rights has or will be filed.

99.  As such, plaintiff demands injunctive and monetary relief against the defendants in accordance with their violation of the City HRL.

## AS AND FOR A SIXTH CAUSE OF ACTION – INTENTIONAL
## INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS

**X.  THE CITY OF NEW YORK'S CONTINUED FAILURE AND THE STATE OF NEW YORK'S OFFICE OF COURT ADMINISTRATION'S CONTINUED FAILURE TO MAKE THE COURTHOUSE LOCATED AT 360 ADAMS STREET, BROOKLYN, NEW YORK, WHEELCHAIR ACCESSIBLE, CONSTITUTES AN INTENTIONAL INTERFERENCE WITH PLAINTIFF'S PRESENT AND FUTURE CONTRACTUAL RELATIONSHIPS AS A PRACTICING ATTORNEY**

100.  Plaintiff repeats and realleges those allegations of the complaint marked and designated herein as paragraphs "1" through "99" with the same force and effect as if herein set forth at length and further alleges that:

101.   The plaintiff, a practicing attorney, conducts business in the Supreme Court building located at 360 Adams Street each and every week. Whenever the plaintiff arrives and conducts business therein, it is pursuant to a valid contract between his legal employer or a retainer agreement with a client.

102.   The defendants continued unlawful discrimination interferes with the plaintiff's valid contracts in that he is prevented from fulfilling the full terms of said contracts, which include any and all duties required of any other practicing attorney. This would include, attending conference calls at JCP, conducting conferences at JCP, arguing motions, selecting juries, and conducting trials. However, many areas of the Court are simply not accessible and the plaintiff is preventing from fulfilling his contacts.

103.   This is due to the intentional conduct and inaction of the defendants in refusing to remove the architectural barriers in 360 Adams Street.

104.   A Notice of Claim relating to this alleged intentional tort has or will be filed. However, the plaintiff avers that the torts herein are of a continuing nature as each and every time plaintiff performs attorney work in the courthouse, he is injured again and again. Any such Notice of Claim should be deemed timely, *nunc pro tunc*, as the defendants have actual notice of the instances alleged herein and would not be prejudiced in their defense. Otherwise, the plaintiff should be given leave to file such late notice of claim and that same should relate back to the commencement of this suit. Should the defendants insist on this condition precedent, the plaintiff reserves the right to recommence a proceeding relating to this intentional tort in State Court and then have same removed back to this instant Federal Action as there is valid supplemental subject matter jurisdiction. This should not be necessary as it is a waste of judicial resources.

105.   The plaintiff is economically harmed by said intentional conduct, as the inability to fully perform the contracts will negatively impact his entitlement to promotions, raises, bonuses, and the continued retention of clients.

106.   As such, plaintiff demands monetary relief against the defendants in accordance with their intentional interference with plaintiff's present and future contractual relationships.

### AS AND FOR A SEVENTH CAUSE OF ACTON – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**XI.**   **THE CITY OF NEW YORK'S CONTINUED FAILURE AND THE STATE OF NEW YORK'S OFFICE OF COURT ADMINISTRATION'S CONTINUED FAILURE TO MAKE THE COURTHOUSE LOCATED AT 360 ADAMS STREET, BROOKLYN, NEW YORK, WHEELCHAIR ACCESSIBLE, HAS RESULTED IN PLAINTIFF SUFFERING UNDUE EMOTIONAL DISTRESS, DUE TO THE INTENTIONAL FAILURE OF THE DEFENDANTS TO MAKE THE COURTHOUSE ACCESSIBLE**

107.   Plaintiff repeats and realleges those allegations of the complaint marked and designated herein as paragraphs "1" through "106" with the same force and effect as if herein set forth at length and further alleges that:

108.   It should be noted that having to write the above facts in this public summons and complaint is humiliating and shocks the conscience.

109.   A Notice of Claim relating to this alleged intentional tort has or will be filed. However, the plaintiff avers that the torts herein are of a continuing nature as each and every time plaintiff performs attorney work in the courthouse, he is injured again and again. Any such Notice of Claim should be deemed timely, *nunc pro tunc*, as the defendants have actual notice of the instances alleged herein and would not be prejudiced in their defense. Otherwise, the plaintiff should be given leave to file such late notice of claim and that same should relate back to the commencement of this suit. Should the defendants insist on this condition precedent, the plaintiff reserves the right to recommence a proceeding relating to this intentional tort in State Court and then have same removed back to this instant Federal Action as there is valid supplemental subject matter jurisdiction. This should not be necessary as it is a waste of judicial resources.

110.   As such, plaintiff demands monetary relief against the defendants in accordance with their intentional infliction of emotional distress, whether directly or vicariously based upon the actions of their employees, agents, and managers.

### AS AND FOR A EIGHTH CAUSE OF ACTION – HUMILIATION

**XII.**   **THE CITY OF NEW YORK'S CONTINUED FAILURE AND THE STATE OF NEW YORK'S OFFICE OF COURT ADMINISTRATION'S CONTINUED FAILURE TO MAKE THE COURTHOUSE LOCATED AT 360 ADAMS STREET, BROOKLYN, NEW YORK, WHEELCHAIR ACCESSIBLE, HAS RESULTED AND WILL CONTINUE TO RESULT IN HUMILIATION SUFFERED BY THE PLAINTIFF**

111.   Plaintiff repeats and realleges those allegations of the complaint marked and designated herein as paragraphs "1" through "110" with the same force and effect as if herein set forth at length and further alleges that:

112.    As indicated above, the events of August 17, 2016, October 2016, November 15, 2016, on December 2 and 12, 2016, January 19 and 27, 2017, July 20, 2017, August 4, 11, and 16, 2017, September 7, 11, 25, 26, and 27, 2017, and October 4, 5, and 16, 2017 were humiliating.

113.    As such, plaintiff demands monetary relief against the defendants in accordance with their humiliation of the plaintiff.

## AS AND FOR A NINTH CAUSE OF ACTION – DEMAND FOR COMPENSATORY DAMAGES IN AN AMOUNT EXCEEDING ONE MILLION DOLLARS

### XIII.   THE DEFENDANTS HAVE DAMAGED PLAINTIFF IN A SUM EXCEEDING $1,000,000 AND PLAINTIFF IS ENTITLED TO COMPENSATORY DAMAGES FOR SAME

114.    Plaintiff repeats and realleges those allegations of the complaint marked and designated herein as paragraphs "1" through "113" with the same force and effect as if herein set forth at length and further alleges that:

115.    The defendants' violations of the Federal, State, and City disability laws, along with the violation of plaintiff's Equal Protection rights, have adversely affected the plaintiff to the extent that he is discriminated against and his contractual relationships have been intentionally interfered with, he has suffered emotional distress from the intentional acts of the defendants, and is consistently humiliated by the defendants.

116.    As such plaintiff demands judgment in an amount exceeding one million dollars.

## AS AND FOR A TENTH CAUSE OF ACTION – DEMAND FOR COSTS AND DISBURSEMENTS

### XIV.   THE DEFENDANTS' INACTION AND UNLAWFUL DISCRIMINATORY CONDUCT HAS REQUIRED PLAINTIFF TO COMMENCE THE INSTANT ACTION, REQUIRING DEFENDANTS TO PAY FOR ANY AND ALL COSTS AND DISBURSEMENTS INCURRED BY PLAINTIFF IN BRINGING AND PROSECUTING SAID ACTION

117.    Plaintiff repeats and realleges those allegations of the complaint marked and designated herein as paragraphs "1" through "116" with the same force and effect as if herein set forth at length and further alleges that:

118.    Pursuant to 42 U.S.C. 12205, plaintiff is entitled to recover all reasonable costs, disbursements, and expenses sustained as a result of bringing and prosecuting this action.

119.   As such, plaintiff demands judgment including all reasonable costs, disbursements, and expenses incurred from this action.

### AS AND FOR AN ELEVENTH CAUSE OF ACTION – DEMAND FOR ATTORNEY'S FEES

**XV.   THE DEFENDANTS' INACTION AND UNLAWFUL DISCRIMINATORY CONDUCT HAS REQUIRED PLAINTIFF TO COMMENCE THE INSTANT ACTION, REQUIRING DEFENDANTS TO PAY FOR ANY AND ALL ATTORNEY'S FEES IN BRINGING AND PROSECUTING SAID ACTION**

120.   Plaintiff repeats and realleges those allegations of the complaint marked and designated herein as paragraphs "1" through "119" with the same force and effect as if herein set forth at length and further alleges that:

121.   Pursuant to 42 U.S.C. 12205, plaintiff is entitled to a reasonable attorney's fee.

122.   As such, plaintiff demands judgment including a reasonable attorney's fee.

**WHEREFORE,** the plaintiff demands judgment against the defendants, with an Order granting:

   A. Injunctive relief, requiring the Defendants to Removal Structural and Architectural Barriers and Make the Courthouse Located at 360 Adams Street, Brooklyn, New York, Wheelchair Accessible, With Respect to its Lavatories, Courtrooms, Conference Rooms, Chambers, Paths of Travel, and all Other Areas Constituting Public Accommodations;

   B. Compensatory damages in an amount exceeding $1,000,000;

   C. Requiring the defendants to pay the plaintiff's costs and disbursements in commencing and prosecuting this action; and

   D. Requiring the defendants to pay the plaintiff's attorney's fees in commencing and prosecuting this action.

Dated: October 24, 2017
   Massapequa, New York

Caner Demirayak, Esq.
Plaintiff Attorney *Pro Se*
15 Sheep Pasture Lane
Massapequa, New York 11758
cjohnd@me.com
516-765-0570

TO:    Agnetha Elizabeth Jacob, Esq.
NYC Law Department
100 Church Street
New York, New York, 10007
212-356-0881
ajacob@law.nyc.gov

Carly Weinreb, Esq.
New York State Office of the Attorney General
120 Broadway
New York, New York 10271
212-416-8577
carly.weinreb@ag.ny.gov

John Joseph Sullivan, Esq.
Assistant Deputy Counsel
NYS Office of Court Administration
Agency Building 4, 20th Floor
Empire State Plaza
Albany, New York 12223
518-474-7469
jjsulliv@courts.state.ny.us

# EXHIBIT "A"

**NEW YORK STATE
UNIFIED COURT SYSTEM**

**FISCAL YEAR 2016-2017**

# BUDGET

**Jonathan Lippman**
CHIEF JUDGE

**Lawrence K. Marks**
CHIEF ADMINISTRATIVE JUDGE

**Ronald P. Younkins**
EXECUTIVE DIRECTOR
OFFICE OF COURT ADMINISTRATION

**Barry R. Clarke**
CHIEF OF OPERATIONS
OFFICE OF COURT ADMINISTRATION

**Maureen H. McAlary**
BUDGET DIRECTOR

*State of New York*
*Unified Court System*



*Lawrence K. Marks*
*Chief Administrative Judge*

*25 Beaver Street*
*New York, N.Y. 10004*
*(212) 428-2100*

December 1, 2015

To:       Honorable Andrew M. Cuomo          Honorable Carl E. Heastie
          Honorable John J. Flanagan         Honorable Jeffrey D. Klein
          Honorable Andrea Stewart-Cousins   Honorable Brian M. Kolb
          Honorable John DeFrancisco         Honorable Herman D. Farrell, Jr
          Honorable Liz Krueger              Honorable Robert C. Oaks
          Honorable John J. Bonacic          Honorable Helene E. Weinstein

From:     Lawrence K. Marks LM

I respectfully submit the itemized estimates of the annual financial needs of the Judiciary for the Fiscal Year beginning April 1, 2016. Article VII, Section 1 of the Constitution requires the submission of these estimates to the Governor and legislative leaders on or before December 1, 2015.

The 2016-17 General Fund State Operations budget request totals $1.9 billion, a cash increase of $44.4 million, or 2.4 percent, over available current-year funds. In this coming fiscal year, the Judiciary must confront significant cost increases, including mandatory salary increases for represented nonjudicial employees, annualization of the cost of the five Family Court judgeships created effective January 1, 2016, and increases in nonpersonal service contractual obligations.

To meet these obligations, it is necessary for the Judiciary to seek an increase in the 2016-17 budget. This budget will allow us to continue our efforts to provide adequate staffing in the courts. Additional funds are also requested for civil legal services to ensure that the most vulnerable New Yorkers are not without counsel in cases involving the essentials of life.

## CHIEF JUDGE'S CERTIFICATION

### ITEMIZED ESTIMATES OF THE
### FINANCIAL NEEDS OF THE JUDICIARY

Pursuant to Article VII, Section 1 of the Constitution of the State of New York, I certify

that the attached schedules are the itemized estimates of the financial needs of the Judiciary for

the fiscal year beginning April 1, 2016 and that they have been approved by the Court of

Appeals.



Jonathan Lippman
Chief Judge of the Court of Appeals

ATTEST:

Clerk of the Court of Appeals

Date: November 23, 2015

## COURT OF APPEALS APPROVAL

### ITEMIZED ESTIMATES OF THE
### FINANCIAL NEEDS OF THE JUDICIARY

Pursuant to Article VII, Section 1 of the Constitution of the State of New York, the Court

of Appeals approves the attached itemized estimates of the financial needs of the Judiciary for

the fiscal year beginning April 1, 2016.

Jonathan Lippman
Chief Judge of the Court of Appeals

Associates Judges of the Court of Appeals:

Eugene F. Pigott, Jr.

Jenny Rivera

Sheila Abdus-Salaam

Leslie E. Stein

Eugene M. Fahey

ATTEST:
Clerk of the Court of Appeals

Date: November 23, 2015

**Unified Court System**
**2016-17 Budget Request**
**All Funds Disbursement Requirements**
**(Millions $)**

| Category/Fund | 2015-16 Planned | 2016-17 Required | Change |
|---|---|---|---|
| **Court & Agency Operations** | | | |
| General Fund | 1,850.1 | 1,894.5 | 44.4 |
| Special Revenue – Federal | 7.0 | 7.5 | 0.5 |
| NYC County Clerks' Operations Offset Fund | 23.2 | 23.7 | 0.5 |
| Judiciary Data Processing Offset Fund | 22.8 | 25.2 | 2.4 |
| Miscellaneous Special Revenue Fund | 24.8 | 25.2 | 0.4 |
| Indigent Legal Services Fund | 25.0 | 25.0 | 0.0 |
| Court Facilities Incentive Aid Fund | 1.9 | 1.6 | (0.3) |
| **Court & Agency Operations – All Funds Total** | **1,954.8** | **2,002.7** | **47.9** |
| **Lawyers' Fund for Client Protection** | **10.7** | **10.7** | **0.0** |
| **Aid to Localities** | | | |
| General Fund | 2.4 | 2.4 | 0.0 |
| Court Facilities Incentive Aid Fund | 104.2 | 104.9 | 0.7 |
| **Aid to Localities – All Funds Total** | **106.6** | **107.3** | **0.7** |
| **Capital Projects** | **5.1** | **5.1** | **0.0** |
| **General Fund Total** | **1,852.5** | **1,896.9** | **44.4** |
| **All Funds Total** | **2,077.2** | **2,125.8** | **48.6** |

## REAPPROPRIATIONS

§3.  The several amounts named in this section, or so much thereof as shall be sufficient to accomplish the purposes designated being the unexpended balances of a prior year's appropriation, are hereby reappropriated from the same funds and made available for the same purposes as the prior year's appropriation, unless amended herein, for the state fiscal year beginning April 1, 2016.

### THE JUDICIARY

### STATE OPERATIONS AND AID TO LOCALITIES - REAPPROPRIATIONS 2016-2017

### SCHEDULE

#### COURTS OF ORIGINAL JURISDICTION

**Special Revenue Funds – Federal / State Operations**
**Federal Operating Grants Fund**
**Federal Miscellaneous Grants (Operating) Account**

By chapter 51, section 2, of the laws of 2015:
For services and expenses including travel
outside the state and the payment of
liabilities incurred prior to April 1, 2015 ............... 2,500,000 ....................(re. 2,500,000)

By chapter 51, section 2, of the laws of 2014, as reappropriated
by chapter 51, section 3, of the laws of 2015:
For services and expenses including travel
outside the state and the payment of
liabilities incurred prior to April 1, 2014 ............... 3,000,000 ....................(re. 1,400,000)

By chapter 51, section 2, of the laws of 2013, as reappropriated
by chapter 51, section 3, of the laws of 2015:
For services and expenses including travel
outside the state and the payment of
liabilities incurred prior to April 1, 2013 ............... 3,500,000 ....................(re. 1,200,000)

By chapter 51, section 2, of the laws of 2012, as reappropriated
by chapter 51, section 3, of the laws of 2015:
For services and expenses including travel
outside the state and the payment of
liabilities incurred prior to April 1, 2012 ............... 5,000,000 ....................(re. 300,000)

By chapter 51, section 2, of the laws of 2010, as reappropriated
by chapter 51, section 3, of the laws of 2015:
For services and expenses including travel
outside the state and the payment of
liabilities incurred prior to April 1, 2010 ............... 6,500,000 ....................(re. 100,000)

**Special Revenue Funds – Federal / State Operations**
**Federal Grants – Health and Human Services**

By chapter 51, section 2, of the laws of 2015:
For services and expenses including travel
outside the state and the payment of
liabilities incurred prior to April 1, 2015 ............ 5,500,000 ....................(re. 5,500,000)

By chapter 51, section 2, of the laws of 2014, as reappropriated
by chapter 51, section 3, of the laws of 2015:
For services and expenses including travel
outside the state and the payment of
liabilities incurred prior to April 1, 2015 ............ 4,500,000 ....................(re. 1,500,000)

| **COURTS OF ORIGINAL JURISDICTION**<br>Maintenance Undistributed Program | **2016-17 Budget Request:  $82,734,560** |
|---|---|
| | *Personal Service: (14,025,513)* |
| | *Nonpersonal Service:  96,760,073* |
| | *Maintenance Undistributed:        0* |

### Program Description

This Program provides funding for the Courts of Original Jurisdiction Maintenance Undistributed Program.

*Courts of Original Jurisdiction Maintenance Undistributed:* This Program includes funding for civil legal services in order to provide counsel to low income New Yorkers in civil cases.  In addition, through special revenue funding requests, this program provides the framework through which grants are realized in support of problem-solving courts and other justice initiatives.

### Summary of 2016-17 Funding Request

The Courts of Original Jurisdiction Maintenance Undistributed Program All Funds budget request is $82.7 million, or a decrease of $6.4 million (-7.2%) from the current year adjusted appropriation.

The undistributed personal service request reflects savings that are generated throughout the year in the trial courts as employees leave service and are replaced (-$23.5 million); funding for lump sum payments associated with employees separating from service ($7.7 million); and, funding to address shifts in overtime usage ($1.8 million).

The nonpersonal service request will provide $85 million to nonprofit agencies in support of civil legal services for indigent persons.  Also reflected in the undistributed nonpersonal service request, is funding for travel ($0.2 million), equipment ($2.1 million) and other professional services ($9.5 million).  The funding for travel is being held in the Undistributed Program to be provided to courts on an as-needed basis as workload and staffing levels shift.  The special revenue funding in other professional services provides appropriation authority for anticipated federal and other grants.  The equipment funding will address the ongoing need to replace outdated courthouse equipment; specifically, furniture, technology equipment, security equipment, and facility-related equipment.

## Courts of Original Jurisdiction
### Budget Summary – All Funds

### Maintenance Undistributed

**2016–17 Request**

| Maintenance Undistributed | Personal Service | Nonpersonal Service | Total |
|---|---|---|---|
| Special Revenue – Federal Funds | $0 | $8,500,000 | $8,500,000 |
| Miscellaneous Special Revenue Fund | $0 | $1,000,000 | $1,000,000 |
| General Fund – Undistributed | ($14,025,513) | $87,260,073 | $73,234,560 |
| **Total:** | **($14,025,513)** | **$96,760,073** | **$82,734,560** |

# EXHIBIT "B"

13245A

**NYC Buildings**

**AI1: Additional Information**
*Must be typewritten.*

310319679

Page number __01__ of __01__          BIS Document No. __01__

DEPT BLDGS   310319679   Job Number

SC352010000   Scan Code

### 1 | Location and Job Information *Required for all applications.*

| House No(s) 360 | Street Name Adams Street | | | |
|---|---|---|---|---|
| Borough Brooklyn | Block 139 | Lot 20 | BIN 3000257 | CB No. 302 |

### 2 | Revisions to Plans/Drawings *Required whenever updating plans. All revisions for each page must be clearly described in section 3.*

Submission is part of a Post Approval Amendment (PAA)?   ○ Yes  PW1 required  ⊗ No          Indicate all actions for this submission:

| Action | Original/New/ Omit Page ID | Superseding Page ID | Action | Original/New/ Omit Page ID | Superseding Page ID | Action | Original/New/ Omit Page ID | Superseding Page ID | Action | Original/New/ Omit Page ID | Superseding Page ID |
|---|---|---|---|---|---|---|---|---|---|---|---|
| S | A101.00 | A101.01 | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |

For "Action" use "N" for new page, "S" for superseding page, "O" for omitting page.          Is this section continued on additional AI1 forms?   ○ Yes  ⊙ No

### 3 | Additional Information *Required for all applications.*

Changes to plans are as follows:

A101.01: CONSTRUCTION PLAN FLOORS 2+9 (Superseding Sheet)

Filed herewith to amend the plans to show as-built conditions of the doorswings to meet accessibility concerns.

**AMENDED**

EXAMINED FOR ZONING, EGRESS AND FIRE
PREVENTION ONLY AS PER DIR. 2/75

JUL 2 0 2012

LISA AMOIA

Falsification of any statement is a misdemeanor and is punishable by a fine or imprisonment, or both. It is unlawful to give to a city employee, or for a city employee to accept, any benefit, monetary or otherwise, either as a gratuity for properly performing the job or in exchange for special consideration. Violation is punishable by imprisonment or fine or both. I understand that if I am found after hearing to have knowingly or negligently made a false statement or to have knowingly or negligently falsified or allowed to be falsified any certificate, form, signed statement, application, report or certification of the correction of a violation required under the provisions of this code or of a rule of any agency, I may be barred from filing further applications or documents with the Department.

Name (please print)   MARTIN FINIO

Signature

Date  7.17.12

(apply their own sign and date over seal)

REGISTERED ARCHITECT  MARTIN JOSEPH FINIO  025111-1  STATE OF NEW YORK

3/09