UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
CANER DEMIRAYAK,

                Plaintiff.

        -against-

CITY OF NEW YORK, NEW YORK CITY
DEPARTMENT OF CITYWIDE ADMINISTRATIVE
SERVICES, LISETTE CAMILO, RICK D.
CHANDLER P.E., IRA GLUCKMAN RA, NEW
YORK CITY DEPARTMENT OF BUILDINGS,
STATE OF NEW YORK, OFFICE OF COURT
ADMINISTRATION, & HON. RONALD YOUNKINS,

                Defendants.
-------------------------------------------------------------------X

Civil Action No.: CV17-5205
(WFK)(RER)
*Pro se* case

Filing Date: 9/5/17

**MEMORANDUM
OF LAW**


**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR A
PRELIMINARY INJUNCTION COMPELLING THE GOVERNMENT TO TAKE
CERTAIN IMMEDIATE ACTIONS TO AVOID FURTHER CONTINUING
DISCRIMINATION ON THE BASIS OF DISABILITY AND FOR A TEMPORARY
RESTRAINING ORDER PREVENTING THE GOVERNMENT FROM TAKING ANY
DIRECT OR INDIRECT RETALIATORY ACTION AGAINST
PLAINTIFF FOR FILING THIS SUIT**


Caner Demirayak, Esq.
Plaintiff *Pro Se*
15 Sheep Pasture Lane
Massapequa, New York 11758
cjohnd@me.com
516-765-0570


*Plaintiff, an attorney, proceeding pro se*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES………………………………………………………....i

I.    PRELIMINARY STATEMENT……………………………........…………………..1

II.   STATEMENT OF FACTS……………………………………………………..3

III.  ARGUMENT: A PRELIMINARY INJUNCTION MUST BE GRANTED BECAUSE PLAINTIFF WILL SUFFER IMMINENT IRREPARABLE HARM AND HAS A STRONG LIKELIHOOD OF SUCCESS ON THE MERITS……………………….8

   A.  The Government is Not Immune From Suit and Has In Fact Consented to Suit……...9

   B.  Plaintiff Will Continue to Face Irreparable Harm in the Form of Discrimination on the Basis of Disability During the Pendency of this Litigation in the Absence of a Preliminary Injunction………………………………………………………11

   C.  Plaintiff Has a Strong Likelihood of Success on the Merits Since the Government is Engaging in Unquestionable Purposeful Discrimination on the Basis of Disability………………………………………………………....………...12

   D.  The Balance of Hardships Favors Plaintiff and the Preliminary Injunction to Temporarily Avoid Discrimination on the Basis of Disability is in the Public Interest………………………………………………………………..15

   E.  Retaliation is Prohibited Under the ADA………………………………………16

IV.   CONCLUSION……………………………………………………………...17

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                    **Page**

*Christian Louboutin SA v. Yves Saint Laurent Am. Holding Inc.*, 696 F.3d 206 (2d Cir. 2002)....8

*Disabled in Action v. Bd. Of Elections*, 752 F.3d 189 (2d Cir. 2014)........................8, 11—13

*Grand River Enter Nations, Ltd. v. Pryor*, 481 F.3 60 (2d Cir. 2007)................................11

*Henrietta D. v. Bloomberg*, 331 F.3d 261 (2d Cir. 2003)...............................................9

*Local 1814, Int'l Longshoremen's Ass'n v. N.Y. Shipping Ass'n , Inc.*, 965 F.2d 1224 (2d Cir. 1992)................................................................................................................8

*Marino v. City Univ. of N.Y.*, 18 F. Supp. 3d 320 (E.D.N.Y. 2014)...............................8—9

*Ross v. City Univ. Of N.Y.*, 211 F. Supp. 3d 518 (E.D.N.Y. 2016).........................9—10

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008)........................................8

**Statutes**

29 U.S.C § 794.................................................................................................9

42 U.S.C § 12182.............................................................................................3

N.Y.S. Exec. L. § 296(2)(a)...............................................................................3

N.Y.C. Admin. Code § 8-107(4)(a).....................................................................3

**Regulations & Accessible Design Standards/Recommendations**

28 CFR Part 35 – Final Rule, Supplemental Information-1.............................................4

28 CFR § 35.133(a)..........................................................................................12

28 CFR § 35.134(a)..........................................................................................16

28 CFR § 35.150(d)..........................................................................................17

2010 ADAAD § 603.3........................................................................................4

2010 ADAAD § 604.3.1.....................................................................................4

2010 ADAAD § 604.8.1.1...................................................................................4

2010 ADAAD § 606.3…………………………………………………………………………………4

U.S. Access Board, Courthouse Access Advisory Committee, *Justice for All: Designing Accessible Courthouses, Recommendations from the Courthouse Access Advisory Committee*, November 15, 2006…………………………………………………………………..…5—6, 15

**Legislative Materials and Executive Proclamations**

134 Cong. Rec. 9379 – 9382, April 28, 1988……………………………………………………..1

Senate Hearing 100-926, on Passage of the Americans With Disabilities Act, S.B. 2345, September 27, 1988…………………………………………………………………………………2

Presidential Proclamation 9302, July 24, 2015………………………………………………………1

**Media Materials**

New York State Unified Court System, Press Release, *New Committee Aims to Promote Court Access for People with Disabilities*, September 26, 2017………………………………………...2

# I. PRELIMINARY STATEMENT

The plaintiff is an attorney confined to a motorized wheelchair because of Becker's Muscular Dystrophy. He is a litigation attorney and he engages in oral argument, jury select, and trials on a weekly basis exclusively at the courthouse located at 360 Adams Street in Brooklyn, New York. Although there is a ramp to enter the building, once inside, persons with disabilities are discriminated against through the presence of architectural barriers in the courthouse.

The paths of travel are insufficient, the bathrooms are not sufficiently accessible, the bathrooms that are barely accessible are not kept in proper working order, there are stairs and steps to enter certain conference rooms and courtrooms, the doors to courtrooms are too small, the judge's benches are too high, the lawyer tables in the well of the court do not have adequate clearance, the lecterns and podiums are not accessible, the law library can only be reached by stairs, and the signage is false.

Architectural barriers are discriminatory because they effectively exclude people with disabilities from participating in the activities of daily life in an equal manner. Thus, "Through the discriminatory effects of architectural...barriers and through prejudice, fears, and narrow mindedness, an enormous, mostly hidden group of second-class citizens has been created who face a lifetime of denial of basic opportunities which most Americans hold dear." Sen. Tom Harkin, 134 Cong. Rec. 9379—9382 (Apr 29, 1988).

On the Twenty-Fifth Anniversary of the passage of the Americans with Disabilities Act, former President Barack H. Obama noted in Proclamation 9302 that "Barriers that limit our neighbors' potential have been torn down, but too many continue to encounter discrimination and structural inequalities that prohibit them from pursuing their dreams" The purpose of this

suit is to tear down additional barriers faced by plaintiff and those seeking access to the courthouse and justice.

Three weeks after this suit was commenced, on September 26, 2017, the State of New York and/or Office of Court Administration empaneled an Advisory Committee on Access to the Courts by Persons With Disabilities. Chief Judge DiFiore stated in the press release: "Access to the courts is a fundamental right protected by our state and federal constitutions." The Chief Judge indicated a need to "[W]ork to identify and remove barriers to court facilities and services, wherever possible, ensuring that New York's state courts are readily accessible to all people…"

Actions speak louder than words. Until proper action is taken, the plaintiff will continue to be discriminated against each and every time he enters the Brooklyn Supreme courthouse. This suit will demonstrate that the government has failed to take the necessary actions to eliminate discrimination against persons with disabilities over the last 27 years. The government should not get a free pass; since small "mom and pop" stores are also subject to the disability access laws. The Rule of Law means nothing if the government is permitted to discriminate against persons with disabilities without any consequences.

"It is time that our government recognizes [the] ability [of persons with disabilities] and gives us the dignity to do what we can do." Sen. Hearing, Rep. Tony Coelho, 1988 on ADA passage. This is exactly what plaintiff is seeking in this action, the dignity of practicing law without experiencing discrimination.

Thus, the plaintiff respectfully requests that this court grant the temporary relief requested in this motion pending a trial to compel the government to make the courthouse fully accessible and on the amount of damages suffered by plaintiff through pervasive discrimination.

## II. STATEMENT OF FACTS

The plaintiff is a person with a qualified disability under the disability laws as he suffers from a neurological muscle wasting disease known as Becker's Muscular Dystrophy, which has confined him to an electric wheelchair since 2006. *See* Plaintiff's Affidavit at ¶¶ 2—4. The plaintiff was admitted to practice law in the State of New York on February 5, 2014. *See id* at ¶ 1. Plaintiff has been practicing in Brooklyn, New York since February 2015. Since August 2016 plaintiff's practice has been exclusively devoted to matters in the Kings County Supreme Court. *See id* at ¶¶ 5—7.

The Kings County Supreme Court building is located at 360 Adams Street, Brooklyn, New York. *See* Amended Civil Complaint, annexed hereto as **Exhibit "B,"** at ¶ 21. The initial Certificate of Occupancy (hereinafter "CO") for the building located at 360 Adams Street, was issued on October 1, 1964. *See* **Exhibit "B,"** at ¶ 22. The CO classified the building as holding occupancy for a Supreme Court Building. *See id.*

On May 31, 1974, the second CO was issued for the building at 360 Adams Street. *See* **Exhibit "B,"** at ¶ 23. The CO included a certification that the building "conforms substantially to...the requirements of all applicable laws, rules, and resolutions for the uses and occupancy specified herein." *See id.* However, this second CO was issued *after* the Rehabilitation Act of 1973 was enacted. *See id.*

Then between 2009 and 2012 the government requisitioned and performed substantial alterations and renovations to portions of the second and ninth floors.[1] *See* Plaintiff's Affidavit at

---

[1] As will be established on the merits of this lawsuit, the renovations to this existing court facility were discriminatory in that it was not performed in compliance with the ADA (42 U.S.C § 12182), New York State Human Rights Law (N.Y.S. Exec. L. § 296(2)(a)), and New York City Human Rights Law (N.Y.C. Admin. Code § 8-107(4)(a)) and such renovations failed to make all paths of travel to the areas of "primary function" accessible. The discriminatory impact of the renovations are of a continuing nature, as the government's application for a certificate of occupancy was denied due to accessibility concerns. The plans for the renovations were required to be

¶¶ 24—26; **Exhibit "B,"** at 25—27. However, most of the courthouse is still completely inaccessible or fails to meet accessible design standards. *See* **Exhibit "B,"** ¶¶ 31—39.

The New York State Unified Court system receives federal funding. *See* **Exhibit "B,"** at ¶ 4. Specifically, the defendants received at least $13.5 million in federal operating grants for usage relating to the court system during the 2016-2017 budget year. *See id.* Thus, New York State, Office of Court Administration, and the City of New York have accepted government funding for the court system. As a result, the government has effectively consented to suit under section 504 of the Rehabilitation Act, which now incorporates the ADA standards and regulations.

Regarding the first floor/ground level, the clerk's office is not handicapped accessible. The doors are too small and there are no wheelchair accessible computers to view cases on.

Regarding the second floor, there is no handicapped accessible restroom in the jury assembly/empaneling area[2]. *See* Plaintiff's Affidavit at ¶ 8; *See* Photos Taken by the Plaintiff, annexed hereto as **Exhibit "A."** There is also a gender-neutral/unisex bathroom, which is not handicapped accessible. *See id; See* **Exhibit "A."** In the Jury Coordinating Part (JCP) courtroom, there is insufficient space between the doors[3]. *See id* at ¶ 9. There is insufficient space between

---

modified. However, there is still no new CO. This form of disability discrimination is not the subject of the instant motion.

[2] The 2010 ADAAD requires "[C]learance around a water closet [to be] 60 inches minimum measured perpendicular from the sidewall and 56 inches minimum measured perpendicular from the rear wall. 28 CFR § 604.3.1 & 604.8.1. In addition, the regulations require that "[M]irrors shall be installed with the bottom edge of the reflecting surface 40 inches maximum above the ground." 28 CFR § 603.3. Further, "[S]inks shall be installed with the front of the higher rim or counter surface 34 inches maximum above ground." 28 CFR § 606.3. The bathrooms in the jury assembly part and other areas noted do not comply with these sections.

[3] Pursuant to the ADA and regulations the U.S. Access Board is required to submit guidelines to the Department of Justice. The ADA then requires the DOJ "[T]o issue regulations that include enforceable accessibility standards applicable to facilities subject to Title II...that are consistent with the minimum guidelines issued by the Access Board." 28 CFR 25 – Final Rule Supplementary Information-1. The federal government and its courthouses comply with these guidelines as per the General Services Administration (GAO). The guidelines may be persuasive authority that the government can use in complying with the disability access laws relating to the Brooklyn

4

the aisles[4]. *See id.* There is a large step to reach the judge's bench. *See id.* There are even more steps to enter the conference room behind the court[5]. *See id.*

Regarding the third floor, every courtroom is not handicapped accessible[6]. *See* Plaintiff's Affidavit at ¶ 10; *See* Photos Taken by the Plaintiff, annexed hereto as **Exhibit "A."** Some courtrooms are so inaccessible that a person in a wheelchair is unable to maneuver in same. *See id.* The path of travel to the Judge's chambers are completely inaccessible. *See id* at ¶ 11. This is the same situation for chambers on other floors[7]. *See id.* The law library on the third floor is completely inaccessible due to a staircase of 8-10 steps. *See id* at ¶ 12; *See* **Exhibit "A."**

Regarding the fourth floor, there is no handicapped accessible bathroom. *See* Plaintiff's Affidavit at ¶ 13; *See* Photos Taken by the Plaintiff, annexed hereto as **Exhibit "A."** However, false signs on the second, third and sixth floor indicate that there is such a handicapped bathroom. *See id* at ¶ 21; *See* **Exhibit "A."** There is a completely inaccessible wing of the fourth floor, which can only be accessed via a large and steep staircase of 8-10 steps. *See id* at ¶ 14; *See*

---

courthouse. Most general ADAAD requirements are identical with the guidelines, but this report shows how those regulations can be implemented specifically for a courthouse. In line with this mandate, "Courtroom doors must provide at last 32 inches of clear opening width. For double doors at least one door must meet the requirements." *See Justice for All: Designing Accessible Courthouses* at pg. 41. The government does not follow this guideline.

[4] The Access Board states that the "Courtroom main aisle must be at least 36 inches wide." *See Justice for All: Designing Accessible Courthouses* at pg. 43. The government does not follow this guideline.

[5] The Access Board states that "All conference rooms must be accessible, including an accessible route to all fixed elements. Sufficient clearances must allow for access into the room and exiting." *See Justice for All: Designing Accessible Courthouses* at pg. 36. The government does not follow this guideline.

[6] The Access Board states "An accessible route is required throughout the courtroom, including from the jury box to the jury deliberation room, from the judge's bench to chambers, and from holding areas to defendant's table, and any other routes intended for users of the courtroom. The route must be at least 36 inches wide…and include maneuvering clearances for people who use wheelchairs." *See Justice for All: Designing Accessible Courthouses* at pg. 45. The government does not follow this guideline.

[7] The Access Board states "[A]reas used solely by the judge as a work area must provide accessible approach, entry and exit…A person with a mobility impairment must be able to circulate throughout the space as well as approach, enter and exit each office." *See Justice for All: Designing Accessible Courthouses* at pg. 71. The government does not follow this guideline.

**Exhibit "A"** At least 2 judges, part of the individual assignment system, have courtrooms up this staircase. *See id.*

Regarding the fifth floor there is a barely accessible bathroom, which is constantly left out of order. *See* Plaintiff's Affidavit at ¶ 19; *See* Photos Taken by the Plaintiff, annexed hereto as **Exhibit "A."** This is the same situation on the seventh floor. *See id.*; *See* **Exhibit "A."**

Regarding all of the bathrooms, in the courthouse there are only 3 barely accessible bathrooms; second, fifth and seventh floor. *See* Plaintiff's Affidavit at ¶ 20. However, these bathrooms are not kept in proper working order, resulting in a courthouse often, with no accessible bathrooms. *See id*; *See* Photos Taken by the Plaintiff, annexed hereto as **Exhibit "A."** There is false signage throughout the courthouse indicating that bathrooms are accessible when such are not accessible. *See id* at ¶ 21.

In all courtrooms on the third, fourth, fifth, seventh, and ninth floors[8], the lawyer tables and desks are not wheelchair accessible[9]. *See* Plaintiff's Affidavit at ¶ 22; *See* Photos Taken by the Plaintiff, annexed hereto as **Exhibit "A."** The judge's benches are not wheelchair accessible. *See id.* The lecterns/podiums are not wheelchair accessible[10]. *See id.* The path of travel within these courtrooms is not wheelchair accessible[11]. *See id.*

---

[8] The plaintiff is not aware of any civil trial courtrooms on the first, sixth, eighth or tenth floors. The first floor has the clerk's office. The sixth floor is for subpoenaed records and court reporting. The eighth floor is an administrative floor. The tenth floor only houses judges' chambers.

[9] The Access Board states "The surface of counsel tables must be between 28 and 34 inches above the finished floor, with clearance for a person using a wheelchair to pull up to the tables." *See Justice for All: Designing Accessible Courthouses* at pg. 67. The government does not follow this guideline.

[10] The Access Board states that. "Lecterns must be 28 inches minimum and 34 inches maximum above the floor." *See Justice for All: Designing Accessible Courthouses* at pg. 67. The government does not follow this guideline

[11] The Access Board states that, "If a rail [bar] is used [for entrance to the well of the court] the opening in the [bar] must be a minimum of 32 inches [wide]." *See Justice for All: Designing Accessible Courthouses* at pg. 49. The government does not follow this guideline.

The plaintiff has experienced continuing discrimination through the aforementioned architectural barriers at least twice a month since August 2016. Sometimes plaintiff experiences such discrimination on a daily basis. Plaintiff was recently in court on October 27, 2017 and argued motions in an inaccessible third floor courtroom.

The plaintiff is concerned that court staff, employees, court officers, law clerks, and judges could take indirect or direct actions against plaintiff in retaliation for bringing this lawsuit. Generally, in New York cases are assigned to random judges through the individual assignment system. True randomization should result in the plaintiff having some of his cases assigned to judges in completely inaccessible courtrooms and chambers. The plaintiff feels that the government may attempt to circumvent the IAS system so as to prevent the plaintiff from being assigned to judges in accessible courtrooms and chambers. However, this would be discriminatory against plaintiff and unequal treatment. Plaintiff is also concerned that court staff could only assign plaintiff to judges that are in barely accessible courtrooms. Again this would be unfair and discriminatory.

## III. ARGUMENT

### A PRELIMINARY INJUNCTION MUST BE GRANTED BECAUSE PLAINTIFF WILL SUFFER IMMINENT IRREPARABLE HARM AND HAS A STRONG LIKELIHOOD OF SUCCESS ON THE MERITS

It is well settled that "The district court may grant a preliminary injunction if the moving party establishes (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief[12]." *Christian Louboutin SA v. Yves Saint Laurent Am. Holding Inc.*, 696 F.3d 206 (2d Cir. 2002). Such injunction must also be satisfactorily shown to be in line with the public interest. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008).

In the disability discrimination context, "If local authorities fail in their affirmative obligations under federal law, the scope of a district court's equitable powers...is broad." *Disabled in Action v. Bd. Of Elections*, 752 F.3d 189 (2d Cir. 2014). Furthermore the "[C]ourt has not merely the power, but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future." *Id.*

The Eleventh Amendment of the Federal Constitution generally renders the States and their officials immune from suit. However, as your honor has previously held, the *Ex Parte Young* exception to immunity[13] from injunctive relief applies where a court determines that

---

[12] The standards for granting a preliminary injunction and temporary restraining order are identical. *See Local 1814, Int'l Longshoremen's Ass'n v. N.Y. Shipping Ass'n , Inc.*, 965 F.2d 1224 (2d Cir. 1992).

[13] As explained herein, the government defendants are not immune from suit under the Rehabilitation Act based on their acceptance of federal funds. The government is also not immune from suit under Title II of the ADA since their conduct violates the ADA and violates plaintiff's equal protection rights under section 1 of the Fourteenth Amendment. However, since the equal protection claim seeks monetary damages, which will be determined after a trial in this matter, it is not the subject of the instant motion. Plaintiff respectfully states that he will be able to satisfy the "three step process," your honor has held necessary to establish an abrogation of state sovereign immunity from monetary damages claims under Title II of the ADA. *See Marino v. City Univ. of N.Y.*, 18 F. Supp. 3d 320 (E.D.N.Y. 2014).

"[T]he complaint [1] alleges an ongoing violation of federal law and (2) seeks relief properly characterized as prospective." *Marino v. City Univ. of N.Y.*, 18 F. Supp. 3d 320 (E.D.N.Y. 2014).

### A. The Government is Not Immune From Suit and Has In Fact Consented to Suit

Section 504 of the Rehabilitation Act of 1973 provides that "No otherwise qualified individual with a disability...shall solely by reason of...his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. 794. Thus, before the ADA was enacted, any local government receiving federal funds was obligated to avoid disability discrimination. The Rehabilitation Act was to be enforced via private causes of action by aggrieved persons with disabilities against the local governments in violation of same.

Thus, it is beyond cavil that "The Second Circuit has held that section 504 of the Rehabilitation Act constitutes a clear expression of Congress's intent to condition acceptance of federal funds on a state's waiver of its Eleventh Amendment Immunity." *Ross v. City Univ. Of N.Y.*, 211 F. Supp. 3d 518 (E.D.N.Y. 2016). Separate and apart from an abrogation of immunity, "The Eleventh Amendment...does not preclude suits against state officers in their official capacity for prospective injunctive relief to prevent continuing violation of federal law," i.e., section 504 and Title II of the ADA. *See Henrietta D. v. Bloomberg*, 331 F.3d 261 (2d Cir. 2003).

In the case at bar, the State of New York, Office of Court Administration, and City of New York have consented to suit under the Rehabilitation Act by virtue of their acceptance of at least $13.5 million in federal funds for use by the court system. The Unified Court System's 2016-2017 Budget, which is annexed hereto a part of **Exhibit "A,"** establishes this fact.

In addition, since "The remedies available to a plaintiff under Title II of the ADA and the Rehabilitation Act are identical…as a practicable matter, the case will proceed on the same course regardless of whether [the government] may later be found immune from an ADA claim." *See Ross v. City Univ. Of N.Y.*, 211 F. Supp. 3d 518 (E.D.N.Y. 2016). As such, the present motion may be heard and determined with reference to the ADA standards for accessible design because the government is not immune from suit under section 504.

However, it is undisputed that plaintiff has established that the government is not immune from suit under Title II of the ADA because the failure to remove architectural barriers is a violation of the ADA and violates the plaintiff's equal protection rights. Without any rational basis, plaintiff, an attorney in a wheelchair, has been intentionally treated differently from other lawyers, that are similarly situated.

There is an extremely high degree of similarity between plaintiff and other fellow lawyers practicing in the courthouse at 360 Adams Street. Plaintiff performs each and every same task as any other lawyer. Plaintiff travels to court independently, attends calendar calls, participates in court conferences, argues motions, participates in hearings, selects juries, and conducts all aspects of full-blown trials. Plaintiff even transports/carries any and all required legal papers. Plaintiff is not given any special treatment or any less obligations/responsibilities that other lawyers, all of whom are similarly situated to the plaintiff.

As such, no rational person could regard the circumstances of plaintiff to differ from those of a comparator fellow lawyer to a degree that would justify the different treatment on the basis of a legitimate government policy; there is no legitimate policy warranting the disparate treatment of an attorney in a wheelchair. Plaintiff has evidently been treated differently from other similarly situated lawyers based on the defendants' intentional and/or purposeful

discrimination by failing to remove architectural barriers, not providing meaningful access and not providing sufficient/proper reasonable accommodations.

Accordingly, in addition to section 504, the plaintiff has established that the defendants are not immune from a suit seeking both equitable and monetary relief under Title II of the ADA.

### B. Plaintiff Will Continue to Face Irreparable Harm in the Form of Discrimination on the Basis of Disability During the Pendency of this Litigation in the Absence of a Preliminary Injunction

In order "To satisfy the irreparable harm requirement, plaintiffs must demonstrate that absent a preliminary injunction, they will suffer an injury that is neither remote nor speculative, but actual and imminent and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Grand River Enter Nations, Ltd. v. Pryor*, 481 F.3 60 (2d Cir. 2007).

The Second Circuit has held that, *inter alia*, it is discriminatory for a government entity to "[F]ail to assure accessibility through temporary equipment." *Disabled in Action v. Bd. Of Elections*, 752 F.3d 189 (2d Cir. 2014).

The plaintiff continues to practice law on a weekly basis at the courthouse located at 360 Adams Street. Since plaintiff filed the instant suit, he had faced additional discrimination through the architectural barriers within the courthouse, most recently on October 27, 2017 while arguing motions on the third floor. It is further certain that plaintiff will face actual and imminent harm on November 15, 2017, November 30, 2017 and December 14, 2017 when he proceeds to jury select and trial on cases.

The plaintiff will also face actual and imminent harm since he will argue motions in different courtrooms throughout the pendency of the litigation on a weekly or daily basis. While in the courthouse, plaintiff will be harmed by the lack of accessibility in the courtrooms, the lack of access to the law library, the lack of access to a particular wing of the fourth floor, and the

lack of accessible bathrooms. Thus, as indicted in *Disabled in Action*, since the "failure to assure accessibility through temporary equipment" is discriminatory, the government should be required to purchase and install such temporary equipment until a final decision on the merits.

With respect to the barely accessible bathrooms, the ADA regulations state "A public entity shall maintain in operable working condition those features of facilities…that are required to be readily accessible and usable by persons with disabilities." 28 CFR 35.133(a). Thus, the government is in violation of the ADA and discriminates against the plaintiff by failing to maintain the few barely accessible bathrooms in proper working order. During the pendency of this suit, the government should be required to maintain those few bathrooms in "operable working condition," until a decision on the full merits.

The harm that will be faced by plaintiff is neither remote nor speculative. It is certain that plaintiff will face these discriminatory barriers. The only way to avoid that harm is to compel the government to, *inter alia*, obtain temporary accessibility equipment.

### C. Plaintiff Has a Strong Likelihood of Success on the Merits Since the Government is Engaging in Unquestionable Purposeful Discrimination on the Basis of Disability

"It is not enough to open the door for the handicapped…a ramp must be built, so that the door car be reached." *Disabled in Action v. Bd. Of Elections*, 752 F.3d 189 (2d Cir. 2014).

The plaintiff will certainly prevail on the merits of this action because the government has discriminated against the plaintiff by failing to assure full program access to the Brooklyn Courthouse based on its failure to remove architectural barriers. There is no question that major areas of the courthouse are completely inaccessible. It is further incontrovertible that every other area of the courthouse is barely accessible for persons with mobility impairments.

In the Second Circuit, "To establish a violation under section 504 or Title II, a plaintiff must demonstrate that (1) he is a qualified individual with a disability, (2) the defendant is subject to one of the acts, and (3) he was denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or was otherwise discriminated against by the defendant because of disability." *Disabled in Action v. Bd. Of Elections*, 752 F.3d 189 (2d Cir. 2014). The Second Circuit has made clear that discrimination under these statutes may exist where the government fails to provide a plaintiff meaningful access.

With particular reference to the claims at issue herein, "Individuals may be deprived of meaningful access to public programs due to architectural barriers…" *Disabled in Action v. Bd. Of Elections*, 752 F.3d 189 (2d Cir. 2014). The Second Circuit noted that since "[T]he failure to accommodate persons with disabilities will often have the same practical effect as outright exclusion, Congress required the states to take reasonable measures to remove architectural and other barriers to accessibility." *See id.*

In this Circuit it is established that "[T]he inaccessibility of existing [government] facilities is not an excuse, but rather a circumstance that requires a public entity to take reasonable…steps to ensure compliance with its obligations under section 504 and Title II of the ADA." *Disabled in Action v. Bd. Of Elections*, 752 F.3d 189 (2d Cir. 2014). Even where a plaintiff is able to participate in a government program, discrimination still exists where architectural barriers are not removed or where facilities are not designed in an accessible manner. This is because the Second Circuit has made clear that "Plaintiffs need not prove that they have been disenfranchised or otherwise completely prevented from enjoying a service, program or activity to establish discrimination." *See id.* This ruling is based on the purpose of the Rehabilitation Act which is to "[E]mpower individuals with disabilities to maximize

employment, economic self-sufficiency, independence, inclusion and integration into society. "
*See id.*

Indeed the circumstances in *Disabled in Action* and the case at bar are analogous. In *Disabled in Action*, disabled voters were faced with a voting scheme that assigned a small portion of polling places at inaccessible locations. In the case at bar, plaintiff is faced with a courthouse, which houses a small portion of judges at inaccessible courtrooms. In *Disabled in Action* the Second Circuit rejected the argument that the reassignment of disabled voters from inaccessible to accessible polling places was a sufficient accommodation. It stated that such an ad hoc determination on the eve of voting day was insufficient. Similarly, the government will have to engage in an ad hoc determination on "trial day" as to whether plaintiff is assigned to a judge in a completely inaccessible courtroom and if the plaintiff, along with the assigned judge, can be reassigned to an accessible courtroom.

However, the plaintiff's case at bar is even stronger because the courtrooms that are accessible to plaintiff are full of inaccessible features, resulting in embarrassing, awkward and humiliating discrimination while working in such courtrooms.

Plaintiff's affidavit, the annexed photographs, and the allegations in this lawsuit make clear that plaintiff will likely succeed on the merits as: (1) he is confined to an electric wheelchair because of Muscular Dystrophy, (2) the defendants are subject to section 504 by virtue of their acceptance of federal funds and subject to Title II based on the violation of plaintiff's equal protection rights, and (3) have denied plaintiff meaningful access to the practice of law in the courthouse located at 360 Adams Street and discriminated against him by failing to remove architectural barriers within the courthouse.

**D. The Balance of Hardships Favors Plaintiff and the Preliminary Injunction to Temporarily Avoid Discrimination on the Basis of Disability is in the Public Interest**

The balance of hardships tips decidedly in the plaintiff's favor. Without the injunctive relief, plaintiff will continue to be discriminated against while the government does nothing to remedy the situation during the pendency of this litigation.

Plaintiff, an attorney who is confined to a wheelchair, will continue to face hardships during the pendency of this litigation in the form of discrimination caused by architectural barriers. Although the government would have to take some action and spend funds to comply with the injunction, the balance of hardships tips in plaintiff's favor since the government is already required to comply with the ADA by utilizing temporary equipment. The government will be required to fully comply with the ADA at the end of this litigation anyway. The government may also be able to save money if these temporary measures prove the best resolution to certain architectural barriers.

Regarding the public interest, as the United States Access Board stated with reference to its report on accessible courthouse design:

> "The notion that accessibility is a large budget item is incorrect. Fixed accessible design elements are frequently no more expensive that fixed barriers, if integrated into the planning and design stage. In addition, accessible design has many dual use advantages. Persons with temporary injuries, pregnant woman, senior citizens, and children can all benefit from accessible design. Attorneys, litigants and court staff utilizing expensive electric equipment or heavy litigation materials enjoy the benefits of accessible doorways, and the elimination of gates into the courtroom well…In short the benefits of accessible design elements are rarely limited to court users with permanent disabilities [and] represent a relative small portion of the….construction and operating budget…creat[ing] an accessible court experience for all."

*See Justice for All: Designing Accessible Courthouses* at pg. 133.

15

As indicated, the temporary accessibility features requested at the courthouse are in the public interest. It is equally clear that any injunction arising out of the instant request for temporary relief is in the public interest, as same would help other people with disabilities.

### E. Retaliation is Prohibited Under the ADA

According to 28 CFR § 35.134(a), "No public entity shall discriminate against any individual because that individual has opposed any act or practice made unlawful by this part, or because that individual made a charge or participated in any proceeding under the ADA or this part."

As indicated herein, the plaintiff is genuinely concerned that court staff, employees, court officers, law clerks, and judges could take indirect or direct actions against plaintiff in retaliation for bringing this lawsuit. The plaintiff feels that the government may attempt to circumvent the IAS system so as to prevent the plaintiff from being assigned to judges in accessible courtrooms and chambers. Plaintiff is also concerned that court staff could only assign plaintiff to judges that are in barely accessible courtrooms to avoid violating the ADA. However, the plaintiff and his clients are entitled to participate in and receive the full benefits of the random assignment of judges. Any other result would be a severe violation of the ADA.

Accordingly, a temporary restraining order or injunction to prevent the feared retaliatory actions must be granted. This is in the public interest because it not only helps plaintiff, but also his clients, adversary attorneys and parties, witnesses, and other individuals privy to cases plaintiff will be proceeding to trial with.

## IV. CONCLUSION

As indicated above, there are numerous architectural barriers present in the Kings County courthouse, which serve as continuing discrimination against the plaintiff during the pendency of this action. Until this suit is concluded entirely on the merits, and pending a trial on the amount of damages plaintiff is entitled to, temporary relief is required to avoid irreparable harm.

Accordingly, plaintiff respectfully requests that this Court grant the motion by issuing an Order:

  i. Requiring the government to remove all false accessibility signs and to install new, correct signage;

  ii. Requiring the government to keep the only 3 barely accessible bathrooms on the second, fifth, and seventh floor in working order;

  iii. Requiring the government to purchase and install temporary portable ramps and lifts for use in the jury coordinating part, law library, and fourth and fifth floor staircases;

  iv. Compelling the government to submit a plan/design for removing all architectural barriers[14], as stated herein, within 120 days; and

  v. Restraining the government and any agent/employee thereof from taking any retaliatory action against the plaintiff in response to his filing of this suit, including but not limited to, any attempts to circumvent the random assignment of judges, or issuing unfavorable rulings/decisions in an attempt to discriminate on the basis of disability.

DATED:      October 27, 2017
            Massapequa, New York

Respectfully submitted,

Caner Demirayak, Esq.

---

[14] As per 28 CFR § 35.150(d), public entities were required to develop a transition plan by July 26, 1992 outlining the steps necessary to achieve program accessibility. Such transition plan is required to (1) identify obstacles in the facility that limit accessibility, (2) describe the methods to make facility accessible, (3) set forth a schedule for completion, and (4) identify the official responsible for implementing the plan. As alleged in this suit, the government is 25 years late.