ORIGINAL

RECEIVED

JAN 03 2018

PRO SE OFFICE

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

CANER DEMIRAYAK,

          Plaintiff.

        -against-

CITY OF NEW YORK, NEW YORK CITY
DEPARTMENT OF CITYWIDE ADMINISTRATIVE
SERVICES, LISETTE CAMILO, RICK D.
CHANDLER P.E., IRA GLUCKMAN RA, NEW
YORK CITY DEPARTMENT OF BUILDINGS,
STATE OF NEW YORK, OFFICE OF COURT
ADMINISTRATION, & HON. RONALD YOUNKINS,

          Defendants.

-----------------------------------------------------------------X

Civil Action No.: CV17-5205

**SECOND AMENDED
CIVIL COMPLAINT**

*PLAINTIFF DEMANDS A
TRIAL BY JURY*

I.    STATEMENT OF FEDERAL-QUESTION AND SUPPLEMENTAL JURISDICTION

1.    This action arises under 42 U.S.C. 12101, & **12131** (Title II of the Americans with Disabilities Act), 29 U.S.C. 701 & 794 (The Rehabilitation Act of 1973), and the Equal Protection Clause of the XIV Amendment to the United States Constitution, **as well as 28 CFR Part 35 (the Regulations implementing Title II) and 28 CFR Part 42, Subpart G (the Regulations implementing The Rehabilitation Act).**

2.    This action also arises under N.Y.S. Exec. L. Section 296(2)(a) (The New York State Human Rights Law), Section 8-107(4)(a) of the New York City Administrative Code (The New York City Humans Rights Law), and common law claims of intentional interference with contractual relationships, intentional infliction of emotion distress, and humiliation. The Court has valid supplemental jurisdiction over said claims pursuant to 28 USC 1367, as the claims are closely related to the federal-question claims brought pursuant to Title II of the Americans with Disabilities Act and The Rehabilitation Act of 1973.

3.    As per 42 U.S.C. 12202, New York State, New York City, and their subdivisions/agencies are not immune from this action pursuant to the Eleventh Amendment of the Constitution of the United States.

4.    The defendants are also not immune from suit pursuant to the Rehabilitation Act of 1973 based upon their receipt of federal funding. Pursuant to the New York State Unified Court System Budget for 2016-17, approximately $13.5 million in federal funds have been accepted. See Exhibit "A," for a copy of the relevant portions of the NYSUCS Budget of 2016-17. As such, the defendants have consented to suit under section 504.

5.     Moreover, the defendants are not immune from suit under either of the federal statutes inasmuch as their conduct violates the plaintiff's Equal Protection rights under section 5 of the 14th Amendment.

6.     Finally, this suit falls within the confines of the *Ex Parte Young* exception to suits seeking prospective injunctive relief against government officials sued in their officially capacity, i.e., defendants Lisette Camilo, Ira Gluckman, Rick Chandler, and Ronald Younkins. Thus, there is no immunity from that part of the suit seeking injunctive relief pursuant to **Title II of the** ADA and Rehabilitation Act.

## II.     STANDING

7.     Plaintiff's instant complaint raises a valid and ripe case or controversy as per Article 3 Section 2 of the United States Constitution.

8.     As indicated herein and below, plaintiff has been injured in the past under the ADA, Rehabilitation Act, State and City statutes, and common law claims on August 17, 2016, October 2016, November 15, 2016, on December 2 and 12, 2016, January 19 and 27, 2017, July 20, 2017, August 4, 11, and 16, 2017, September 7, 11, 25, 26, and 27, 2017, and October 4, 5, and 16, 2017.

9.     This discriminatory treatment continues to occur and has continued to occur even after the suit was commenced on September 5, 2017. Plaintiff intends to and will continue to return to the court building at 360 Adams Street on a weekly basis. Furthermore, the court can redress plaintiff's injury by a favorable decision, thereby ordering the defendants to, *inter alia*, remove architectural barriers.

## III.     THE PARTIES INVOLVED

### a. THE PLAINTIFF

10.     The plaintiff, CANER DEMIRAYAK, is a resident of Nassau County, New York. Plaintiff is an attorney admitted to practice law in the State of New York. Plaintiff practices personal injury law in Kings County five days per week. Plaintiff is proceeding *pro se* as well as on behalf of all other similarly situated persons with disabilities who require the use of a wheelchair. However, this is not a class action suit.

11.     Plaintiff is a person with a qualified disability in accordance with the Americans With Disabilities Act, Rehabilitation Act, and New York State and City Human Rights Laws. Specifically, plaintiff suffers from Becker's Muscular Dystrophy, a muscle wasting disease, which has confined the plaintiff to a motorized wheelchair. Plaintiff uses a motorized wheelchair everyday and is unable to ambulate without the assistance of same.

b. **THE DEFENDANTS**

12.     The defendant, CITY OF NEW YORK, is a municipal entity duly formed under the laws of the State of New York. The CITY OF NEW YORK is the current owner of the building located at 360 Adams Street, Brooklyn, New York. Upon information and belief, the CITY OF NEW YORK receives federal financial assistance.

13.     The defendant, NEW YORK CITY DEPARTMENT OF CITYWIDE ADMINSTRATIVE SERVICES (**hereinafter "DCAS"**), is an agency/entity/sub-part of the City of New York and is responsible for the management, oversight, and administration of buildings owned by the City of New York, including signing, approving, and submitting construction/work permits for City owned buildings **and complying with the Americans with Disabilities Act and section 504. Upon information and belief DCAS receives federal financial assistance.**

14.     The defendant, LISETTE CAMILO, is the Commissioner of **DCAS** and is responsible for overseeing all actions and operations of **DCAS**. This defendant is being sued in her official capacity as Commissioner.

15.     The defendant, RICK D. CHANDLER P.E., is the Commissioner of the New York City Department of Buildings. Defendant, RICK D. CHANDLER P.E., is responsible for overseeing all operations and planning of the New York City Department of Buildings. This defendant is being sued in his official capacity as Commissioner.

16.     The defendant, IRA GLUCKMAN RA, is the Kings County Borough Commissioner of the New York City Department of Buildings. Defendant, IRA GLUCKMAN, RA is responsible for overseeing all operations and planning of City Buildings Located in Kings County on behalf of the New York City Department of Buildings. This defendant is being sued in his official capacity as Borough Commissioner.

17.     The defendant, NEW YORK CITY DEPARTMENT OF BUILDINGS (**hereinafter "DOB"**), is an agency/entity/sub-part of the City of New York, duly formed under the laws of the State and City of New York. The NEW YORK CITY DEPARTMENT OF BUILDINGS, *inter alia*, is responsible for approving construction permits, and ensuring that proposed work is in compliance with all applicable laws, including the Americans with Disabilities Act. Upon information and belief, the **DOB** receives federal financial assistance.

18.     The defendant, STATE OF NEW YORK, is a governmental entity subject to the requirements of Title II of the Americans with Disabilities Act, **and apparent alter-ego of the Unified Court System. It is directly liable for violating the disability access laws, including failing to ensure federal funding provided to the Office of Court Administration is utilized in compliance with section 504 of the Rehabilitation Act and the ADA. This defendant is also** vicariously responsible for the actions and omissions of its agents/employees associated with the Office of Court Administration. Upon information and belief, the STATE OF NEW YORK receives federal financial assistance.

3

19.     The defendant, OFFICE OF COURT ADMINISTRATION (**hereinafter "OCA"**), is an agency/entity/sub-part of the State of New York, duly formed under the laws **and Constitution** of the State **of New York. OCA is the administrative arm of the New York State court system. OCA** is responsible for the administration and oversight of the State, County, and City courthouses, including, ensuring that the courthouses are maintained and operated in compliance with all applicable laws, **including Title II of the ADA and the Rehabilitation Act.**

20.     **OCA uses an ADA Liaison program in dealing with accessibility issues within the courthouses. OCA and its employees/agents have implemented and administered the ADA Liaison Program in direct contravention of the Rehabilitation Act and ADA. As explained herein, this defendant and its employees/agents have failed to provide meaningful access at the Brooklyn courthouse.** Upon information and belief, **OCA** receives federal financial assistance.

21.     The defendant, HON. RONALD YOUNKINS (**hereinafter "Younkins"**), is the Executive Director and Chief of Operations of the Office of Court Administration. **Younkins** is responsible for the day-to-day oversight of the courthouses maintained by the Office of Court Administration, including, ensuring that the courthouses are maintained and operated in compliance with all applicable laws.

22.     **As Executive Director, Younkins is responsible for overseeing all facilities utilized by OCA, including the Brooklyn courthouse. Although the facilities are required to be owned by the local governments under the Judiciary Law, Younkins still has an oversight and enforcement role over all issues relating to New York State court facilities.**

23.     **Younkins has a direct connection to the enforcement of the ADA and section 504 with respect to court facilities utilized by OCA, including the Brooklyn Courthouse. He is tasked with supervising facilities and resources, including assisting localities, such as City of New York, with the operation and maintenance of their court facilities. His inactions, omissions, direct conduct, and/or refusal to ensure the Brooklyn courthouse provides meaningful access to plaintiff makes him liable herein.** This defendant is being sued in his official capacity as Executive Director.

## IV.     STATEMENT OF FACTS APPLICABLE TO ALL PARTIES AND CAUSES OF ACTION

24.     The Kings County, Supreme Court building is located at 360 Adams Street, Brooklyn, New York. This building is owned by the CITY OF NEW YORK and managed/maintained by **DCAS**, as per the information filed with the **DOB**.

25.     The initial Certificate of Occupancy (hereinafter "CO") for the building located at 360 Adams Street, was issued on October 1, 1964. The CO classified the building as holding occupancy for a Supreme Court Building. The initial CO listed the building as including twelve (12) floors, two (2) penthouse levels, a cellar, and a ground floor. Thus, the CO listed 360 Adams Street as a public building. The CO does not list the building as a landmark and it has no grandfather status.

4

26.     On May 31, 1974, the second CO was issued for the building at 360 Adams Street. The CO included a certification that the building "conforms substantially to...the requirements of all applicable laws, rules, and resolutions for the uses and occupancy specified herein." However, this second CO was issued *after* the Rehabilitation Act of 1973 was enacted.

27.     On the New York City Department of Buildings website list of COs, there is an entry indicating that under job number 310319679, "None issued or no image available."

28.     A review of job number 310319679, makes clear that the City applied for a construction permit, with the following description: "Conversion and Renovation of 2nd Floor Assembly Space and Removal of Detention Cells on 9th Floor – Architectural Work – Amended CO to be Obtained." The permit application lists an alteration type 1, architectural change (OT) and a change in occupancy/use.

29.     According to the permit application, the listed cost of the "renovation" is $3,328,000. Although, the job permit required a change in the CO and substantial architectural changes exceeding three million dollars, the permit includes a notation that the job is an "alteration but not a substantial alteration." The cost affidavit indicated that the job would entail demolishing the existing partitions and constructing new partitions and installing and finishing floors.

30.     Upon personal knowledge of viewing the 2nd and 9th floors, and the areas, which were renovated first hand, it is clear that the renovations do constitute substantial alterations. Moreover, the cost of $3.3 million dollars and the fact that the renovations took more than two years to complete makes same inherently substantial. The City listed "not a substantial alteration" in an attempt to avoid and conceal compliance with all applicable rules prohibiting the failure to make a building wheelchair accessible after substantial alterations.

31.     Moreover, the absence of the amended CO for this job on the NYC Department of Buildings website, is designed to conceal the defendants' purposeful violation of the disability laws. Indeed, a CO may have never been issued because the alterations violated the disability laws and a required compliance certification may not have been able to be submitted in good faith, honesty, and fair dealing.

32.     Indeed, on July 20, 2012, the plans for the job listed above were required to be revised/amended with respect to the door swings to meet accessibility concerns. See Exhibit "B," for a copy of the document indicating changes to the plans due to accessibility concerns. Thus, clearly the job plans themselves did not comply with the disability laws, and the City, by making such revisions, admits that 360 Adams Street is subject to the disability laws.

33.     The mandatory change to the plans was ordered AFTER an application was made for a new certificate of occupancy. The CO application, dated June 20, 2012, included a certification that the plans and construction complied with all applicable laws. Clearly, this was a misrepresentation, as the CO application was not approved as per the July 20, 2012 mandatory revision.

34.     Also, upon personal knowledge, the renovation of the 2nd floor **wing did not include the creation of any wheelchair accessible bathrooms within the renovated wing.** The MEN's bathroom was not modified, nor was one installed on the 2nd floor. Indeed, **there is a** MEN's bathroom on the 2nd floor **that** can be entered with a wheelchair. However, **this bathroom was not part of the renovations and** the stall is not **sufficiently** large enough to accommodate a wheelchair. This is the same fact on the 4th, 6th, 7th, 8th, 9th, 10th, 11th, and 12th floors. There is a wheelchair accessible stall on the 5th floor in the MEN's bathroom, but on December 2, 2016, when the plaintiff personally went there, there as a garbage bag and tape around the toilet.

35.     Strangely, based upon personal knowledge, **until December 1, 2017, there were** signs located on each floor of the courthouse indicating that an accessible bathroom is present. However, upon entering the bathrooms, with the exception of the 2nd and 5th floor, there are NO wheelchair accessible stalls. The presence of these signs **was** again a purposeful attempt at concealing the defendants' violations of the disability laws.

36.     With respect to the second floor, the Jury Coordinating Part courtroom was, for some reason, not part of the renovations. Instead same was left blatantly inaccessible for wheelchairs. A person in a wheelchair who would have to conference a case with the Presiding JCP Justice is unable to get to the conference room **or bench, as there is no accessible route provided.** The plaintiff has experienced this first hand at least **8** times and will continue to experience same as he is assigned to cases in JCP.

37.     With respect to other areas in the Courthouse, various courtrooms on the 3rd, 4th, 5th, 6th, 7th, 8th, 9th, 10th, 11th, and 12th floor are not accessible for wheelchairs. Specifically, based upon personal knowledge, the space between the benches and the bar of the courtroom is not wide enough for wheelchairs to fit through, thereby denying an accessible path of travel/**route** to a place of public accommodation. The plaintiff has experienced this first hand at least **45** times and will continue to experience same as he is assigned to different judges pursuant to the Individual Assignment system.

38.     Based upon personal knowledge, the majority of doors that members of the public must egress through to enter and exit the courtrooms are not wheelchair accessible.

39.     Based upon personal knowledge, several desks, tables, and attorney's tables in the courtrooms do not provide the required space under the table.

40.     Based upon personal knowledge, the path of travel in the majority of courtrooms is not accessible.

41.     Based upon personal knowledge, there is no access to courtroom 423 as there is a set of 8 to 9 steps without any other path of travel therein.

42.     Based upon personal knowledge, there is no access to the law library on the third floor since there is a set of 10-12 steps without any other path of travel therein.

### a. Specific Discriminatory Incidents

43.     On August 17, 2016, the plaintiff was sent to Judge **Genovesi** on the third floor so as to conference a case and enter into a summary jury trial agreement. The conference was supposed to be held in the Judge's chambers on the third floor, which was not handicapped accessible. Thus, the plaintiff was made to wait and then the conference was held in the hallway on a **public** bench outside of the Judge's chambers, **being denied meaningful access and not being treated similarly to comparator lawyers with no rational basis.**

44.     In October 2016, the plaintiff was assigned to orally argue liability and threshold motions before Judge **Toussaint** on the third floor of 360 Adams Street. When the plaintiff entered the courtroom it became clear that there was insufficient space for a wheelchair to fit between the first bench and the bar. The plaintiff attempted to pass through same, but was unable to.

45.     The undersigned's wheelchair is 24 inches wide, one of the smallest chairs available. When the undersigned attempted and failed to pass through that area to reach the clerk and to hand up Reply papers, the clerk yelled that the plaintiff should go against the wall because he is blocking everyone else from getting through.

46.     At no point did the clerk or any employee or agent of the defendants ask the plaintiff if he needed assistance or provide an reasonable accommodation. Since the Judge's part rules required that all papers be handed up before the call of the calendar, the plaintiff again tried to get the attention of the clerk. However, the clerk yelled that I should go against the wall again.

47.     When the calendar was first called one of plaintiff's motions was marked second call. During the second call, the Judge on the bench stated she was adjourning the motion because she did not receive the Reply papers. The plaintiff responded that he was unable to hand the papers in because the courtroom was inaccessible and none of her staff provided a reasonable accommodation or assisted plaintiff in giving the papers up.

48.     The Judge responded, I don't care, in my part I must read all the papers. All of this transpired in a courtroom full of 40-50 other attorneys who observed this conduct. The disregard and actions caused the plaintiff to become severely distressed. As plaintiff left the courtroom, the emotional distress made him yell out that it is not his fault the courtroom is not accessible and felt extremely distressed, embarrassed, and humiliated for the remainder of the day. **Plaintiff was denied meaningful access, subject to deliberate indifference, and was not treated similarly to comparator lawyers with no rational basis.**

49.     When the undersigned returned to his law firm that day, he requested to never be sent to that Judge's courtroom again, and the firm agreed. However, any one of the plaintiff's cases could very well be assigned to said judge, resulting in even more emotional distress.

50.     On November 15, 2016, the plaintiff tried the summary jury trial case mentioned above in paragraph 43, in a courtroom on the fourth floor. The plaintiff had a co-counsel for

another client and we tried the case together. Of note, and with reference to the Equal Protection requirement for "similarly situated persons," plaintiff's co-counsel was an attorney *not* in a wheelchair. However, the plaintiff was extremely similar to this co-counsel, and performed all of the work in the trial, as any other lawyer would. Plaintiff did *everything* else. During this trial plaintiff had a difficult time maneuvering around the courtroom. There was insufficient space under the lawyer tables; it was tough to move around and effectively argue before the jury, **denying plaintiff meaningful access and treating him differently from comparator lawyers with no rational basis.**

51.      On December 2, 2016, the plaintiff was scheduled to begin selecting a jury at 10:00 a.m. Plaintiff entered the courthouse at approximately 9:15 a.m., and wanted to use the bathroom before selecting the jury. The plaintiff went to the 2nd floor MEN's bathroom and attempted to enter the toilet. While doing so the plaintiff realized that the stall was so small that the door would not close, **as the stall was not ADA compliant**. At the same time plaintiff realized that anyone in that bathroom could be part of the jury pool to be selected. Plaintiff faced severe embarrassment, humiliation and emotional distress in his inability to use the 2nd floor bathroom, **denying plaintiff meaningful access.**

52.      As such, plaintiff proceeded to the information desk and asked an Officer if there were any accessible bathrooms. An unknown woman standing nearby looked at plaintiff in shock while he was speaking with the Officer. The plaintiff was advised that all of the floors should have accessible bathrooms.

53.      Thus, the plaintiff proceeded to the fourth floor and saw a sign indicating an accessible bathroom. However, upon entering the bathroom it was evident there were no accessible stalls.

54.      As such, the plaintiff approached an Officer at the desk and again inquired regarding accessible bathrooms. There were other persons nearby and they all looked shocked as I was speaking with the Officer. The Officer advised he had confirmation that the 5th floor MEN's room was made accessible and that the 9th floor WOMEN's room was made accessible.

55.      The plaintiff then proceeded to the 5th floor bathroom. Upon entering the bathroom, the stall was accessible, but the toilet was covered in black garbage bags and tape, rendering same unusable, **denying plaintiff meaningful access.**

56.      By this time, the plaintiff had to return to JCP for the calendar call and feared he would have to abruptly leave during jury select to find a bathroom. However, the plaintiff was never able to use the bathroom that day during his time in the Kings County, Supreme Court, **denying plaintiff meaningful access.**

57.      Right before the calendar call, the plaintiff inquired as to how he would get over the 6-8 inch step in the JCP part near the Judge's conference room. The clerk advised he is not aware of any other way in and that the Judge might have to come out. The uncertainty and the fact that several other attorneys from the plaintiff's office were present greatly distressed, embarrassed, and humiliated the plaintiff, **denying plaintiff meaningful access, subjecting him**

to deliberate indifference and not treating him equally to other comparator lawyers with no rational basis.

58.     On January 19, 2017, the plaintiff tried a case on the third floor **in room 359**. This courtroom was especially difficult to maneuver in. Each time the plaintiff wanted to move around in the courtroom, every person had to stand up and move out of the way. Further, the lawyer tables had insufficient space for wheelchairs. The plaintiff often tried to move around during the trial, but there was no room to do so. During this trial the plaintiff wanted to speak with his independent eyewitness and client, but could not due to the insufficient space in the courtroom. Thus, when the plaintiff called these two individuals as witnesses, he was actually unsure if they were in the courtroom or outside waiting. **Plaintiff was denied meaningful access and not treated the same as other comparator lawyers with no rational basis.**

59.     On January 27, 2017, the plaintiff tried a case on the fourth floor **in room 469**. This courtroom made it very difficult for the plaintiff to get around and at one point plaintiff knocked into the podium and it fell over, making a loud noise in front of the jury. This was an especially heated trial because plaintiff's adversary attorney made comments to the jury during select and opening statement to "disregard the plaintiff's wheelchair as this case is not about him." Like the other courtrooms, there was insufficient space under the lawyer tables. **Plaintiff was denied meaningful access and not treated the same as other comparator lawyers with no rational basis.**

60.     On July 20, 2017, the plaintiff, while waiting to be assigned a trial judge in JCP, proceeded to the law library on the third floor. It was the plaintiff's first time attempting to access the library. When the plaintiff entered the doorway near the law library he noticed the library was in a lower floor with a set of stairs. When he spoke with the court employee at the desk of the library, plaintiff was advised there was no way to get into the library with a wheelchair. An unknown person standing nearby then shouted, "Damn that sucks!" Feeling extremely embarrassed, distressed and humiliated, the plaintiff went back to the lawyer's lounge and was unable to review his notes for trial **and look up the law** in the quiet of a library. **Plaintiff was also unable to research the law available in the library. Plaintiff was denied meaningful access, subjected to deliberate indifference, and not treated the same as other comparator lawyers with no rational basis.**

61.     On or about August 4 and August 11, 2017, plaintiff was assigned motions in a courtroom on the third floor **in room 359**. The courtroom is extremely small and there was not even enough room for persons ambulating without wheelchairs. Plaintiff was scheduled to argue a motion on August 4, 2017. When the case was called the plaintiff had to loudly to state to a courtroom full of other attorneys to "clear out! I cannot get through unless everyone moves from the front row." Luckily, plaintiff's wheelchair was small enough to fit through the narrow bench, which is not ADA compliant. When plaintiff made it to the lawyer's table in the well of the courtroom, it was clear the table was not accessible as there was no sufficient space under same. This was extremely embarrassing, distressing and humiliating for the plaintiff. **Plaintiff was denied meaningful access, subjected to deliberate indifference, and not treated the same as other comparator lawyers with no rational basis.**

62.     On August 16, 2017, the plaintiff desired to enter courtroom **423** to observe a jury trial that was being conducted by a colleague. While **rolling** towards the courtroom the plaintiff noticed a set of 8 or 9 steps. It quickly became clear there was no access to the courtroom. Plaintiff's colleague and other persons overhearing the situation asked if there was anything they could do. Feeling very embarrassed, distressed and humiliated, the plaintiff advised he would just go somewhere else, and lost the opportunity to observe the trial. **Court employees and the clerk assigned to room 423 told plaintiff the proceeding would not be relocated. Plaintiff was denied meaningful access, subjected to deliberate indifference, and not treated the same as other comparator lawyers with no rational basis.**

63.     On or about September 7, 2017, the Court installed a new sign on several walls in the courthouse stating that there were accessible bathrooms on the 4th floor. However, upon personal knowledge, there is no such accessible bathroom. **This denies plaintiff meaningful access and violates 28 CFR Part 35. As of December 8, 2017, inaccurate signs are still present in the second floor "security" and metal detector area near the central jury room.**

64.     On September 11, 2017 the plaintiff conducted jury select and a trial in a courtroom located on the fourth floor **in room 441**. In this courtroom, the lawyer tables did not have sufficient space underneath to accommodate a wheelchair and the paths of travel in the room were very narrow and made it extremely difficult for the plaintiff to get around. **Plaintiff was denied meaningful access and not treated the same as comparator attorneys with no rational basis.**

65.     On September 25, 2017 after picking a jury the plaintiff was assigned to trial **Judge Wade** in the aforementioned courtroom 423, i.e., the courtroom up the staircase. The plaintiff had his client with him and realized he could not get to the courtroom. The adversary attorneys went up the stairs and spoke with the court staff as the plaintiff and his client waited. This was extremely embarrassing after the plaintiff had prepared his client for trial several times before September 25, 2017. The Court wanted to reassign the plaintiff to a different judge. However, at plaintiff's insistence of fair and random assignment of judges, the court decided to move the judge in room 423 to a different, yet still barely accessible courtroom on the fourth floor. After the trial ended on September 27, 2017, the plaintiff's client questioned whether we had lost the case because plaintiff's disability required a change in courtrooms and if that inconvenienced court staff. **Plaintiff was extremely denied meaningful access, subjected to deliberate indifference and not treated the same as comparator attorneys with no rational basis.**

66.     On October 4, 2017, while picking a jury on the second floor, the plaintiff tried to use the bathroom. However, upon entry it was clear that the, wheelchair stall was "out of order." This stall is still not built to ADA design standards, but the plaintiff's wheelchair can fit, barely. The stall was "out of order" due to the placement of two lines of duct tape on the door and a garbage bag around the toilet. **Plaintiff was denied meaningful access and subjected to deliberate indifference.**

67.     On October 5, 2017, while trying the case, the same bathroom stall was still "out of order." At plaintiff's complaint to the ADA Liaison for Kings County, Supreme Court, he was told that only the 7th Floor bathroom was working at the time.

68.     On October 11, 2017, the aforementioned second floor bathroom was still out of order. Thus, when the plaintiff sent an e-mail to the ADA Liaison while in Court through his phone he received a response from the Commanding Court officer in charge. The responding e-mail indicated that she would request expedited repairs to the bathroom The e-mail also indicated that there was a wheelchair accessible stall in the jury assembly room on the second floor. However, when the plaintiff went to the jury assembly bathroom, it was clear that there is no accessible stall in such bathroom. **Plaintiff was denied meaningful access and subjected to deliberate indifference.**

69.     On October 16, 2017, the plaintiff commenced a trial on the fourth floor **in room 438** and the courtroom was barely accessible. There was insufficient space under the lawyer tables, the path of travel in and out of the well was insufficient, and, during each side bar, the judge had to come down off the bench because the judge's seat was too high for a person in a wheelchair to participate in a sidebar. Also, during the trial the plaintiff had an extremely difficult time maneuvering around the courtroom. **Plaintiff was denied meaningful access, subjected to deliberate indifference, and not treated similarly to comparator lawyers with no rational basis.**

70.     Inasmuch as the above mentioned incidents are of a continuing nature, the plaintiff reserves the right to further amend the complaint as new incidents arise during the pendency of this lawsuit. It is absolutely certain that more issues will arise.

71.     The plaintiff does not specifically list other courtroom numbers, judges, court attorneys, or part clerks involved due to fear of reprisal and retaliation. However, detailed information regarding same will be submitted to the assigned Judge in this federal action, confidentially and *in camera*, if same is required. It is noted that any such reprisal and retaliation is prohibited by 42 U.S.C. 12203(a) & (b), and plaintiff reserves the right to **request leave of court to** add claims for same **via supplemental pleadings** should any reprisal or retaliation arise during the litigation of this matter.

**AS AND FOR A FIRST CAUSE OF ACTION –
VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**

V.     **THE CITY OF NEW YORK'S FAILURE AND THE STATE OFFICE OF COURT ADMINISTRATION'S FAILURE TO MAKE THE COURTHOUSE LOCATED AT 360 ADAMS STREET, BROOKLYN, NEW YORK, WHEELCHAIR ACCESSIBLE, DESPITE SUBSTANTIAL ALTERATIONS, VIOLATES TITLE II OF THE FEDERAL AMERICANS WITH DISABILITIES ACT (HEREINAFTER "ADA")**

72.     Plaintiff repeats and realleges those allegations of the complaint marked and designated herein as paragraphs "1" through "71" with the same force and effect as if herein set forth at length and further alleges that:

73.     Pursuant to 42 U.S.C. **12132**, "[N]o...individual...shall, **by reason of such disability be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by such entity.**"

74.     It is deemed discriminatory to afford an individual on the basis of disability with the opportunity to participate in or benefit from the **aid, benefit, or service** (1) not equal to that afforded to others, **(2) not as effective in affording equal opportunity to obtain the same result, benefit of achievement,** or **(3)** different or separate from that **provided** to others **as per 28 CFR 35.130(a)** and **(b).**

75.     It is also discriminatory for a public entity to (1) fail to remove architectural barriers that are structural in nature, in existing facilities, where such removal is **necessary to ensure its services, programs, or activities are readily accessible** and **where same** would not constitute an **undue burden,** (2) fail to take such steps as may be necessary to ensure no individual with a disability is excluded, denied services, segregated, or otherwise treated differently from other individuals because of the absence of auxiliary aids or services, **including the failure to provide services, programs or activities in the most integrated setting possible,** (3) failure to make reasonable modifications in the policies, practices or procedures of the public entity, or (4) failing to use alternative methods to avoid discrimination when all other options are not readily achievable, **as per 28 CFR 35.150(b)(1).**

76.     In removing structural/architectural barriers, a public entity is required to conform its construction to the ADA Design Standards, promulgated by the Department of Justice. The most current design standards were issued in 2010. **With respect to certain construction performed before the effective date of the most recent ADAAD standards, the 1991 Standards would be applicable.**

77.     With respect to alterations to an existing facility, it is unlawful discrimination to fail to "[M]ake alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs **as per 28 CFR 35.151(b)(1).**

78.     Moreover, it is unlawful and discriminatory for a public entity to undertake an "alteration that affects or could affect usability of or access to an area of the facility containing a primary function, without also making the alterations in such a manner that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities where such alterations to the path of travel or the bathrooms, telephones, and drinking fountains serving the altered area," **as per 28 CFR 35.151(b)(4).**

79.     Upon information and belief, the defendants' renovation of the second and ninth floor of 360 Adams Street was discriminatory in that it failed to ensure that the renovations complied with the ADA. Being that the renovations were substantial, the defendants have opened the door and are now required to REMOVE ANY AND ALL STRUCTURAL AND ARCHITECTURAL BARRIERS within the entirety of 360 Adams Street. Specifically, the

renovations to the second floor affects each and every part of the building, as the centralized calendar control part and jury coordinating part are located on the second floor. Said parts result in cases being assigned out to random judges on random floors, any of which, the plaintiff may be assigned to. This is certain.

80. **Furthermore, plaintiff has been denied meaningful access in light of the allegations herein, including but not limited to, Younkins, OCA and the State's supervision and operation of court facilities and the ADA Liaison program, along with the City Defendants' failures to remove architectural barriers and provide services in the most integrated setting possible.**

81. **The allegations herein establish that plaintiff is a person with a qualified disability, that the defendants are subject to Title II of the ADA with reference to an existing facility and the altered areas of such facility, and that plaintiff has been discriminated against and denied meaningful access.**

82. As such, plaintiff demands injunctive and monetary relief against **all of** the defendants in accordance with their violation of the ADA. **Further, plaintiff repeats and realleges herein the allegations listed below in paragraphs "84" through 89" with the same force and effect as if set forth herein and states that such allegations combined with the allegations contained above constitute a violation of plaintiff's Equal Protection rights and violates the ADA, entitling plaintiff to monetary damages and injunctive relief.**

<u>**AS AND FOR A SECOND CAUSE OF ACTION –
VIOLATION OF THE REHABILITATION ACT**</u>

VI. <u>THE CITY OF NEW YORK'S FAILURE AND THE STATE OF NEW YORK'S OFFICE OF COURT ADMINISTRATION'S FAILURE TO MAKE THE COURTHOUSE LOCATED AT 360 ADAMS STREET, BROOKLYN, NEW YORK, WHEELCHAIR ACCESSIBLE, VIOLATES SECTION 504 OF THE REHABILITATION ACT (HEREINAFTER "504")</u>

83. Plaintiff repeats and realleges those allegations of the complaint marked and designated herein as paragraphs "1" through "82" with the same force and effect as if herein set forth at length and further alleges that:

84. Pursuant to 29 U.S.C. 794, "No otherwise qualified individual with a disability...shall solely by reason of...his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

85. **It is deemed discriminatory to afford an individual on the basis of handicap with the opportunity to participate in or benefit from the aid, benefit, or service (1) not equal to that afforded to others, (2) not as effective in affording equal opportunity to obtain the same result, benefit of achievement, or (3) different or separate from that provided to others as per 42 CFR 42.503.**

86.     It is also discriminatory for a public entity to (1) fail to remove architectural barriers that are structural in nature, in existing facilities, where such removal is necessary to ensure its services, programs, or activities are readily accessible and where same would not constitute an undue burden, (2) fail to take such steps as may be necessary to ensure no individual with a disability is excluded, denied services, segregated, or otherwise treated differently from other individuals because of the absence of auxiliary aids or services, including the failure to provide services, programs or activities in the most integrated setting possible, (3) failure to make reasonable modifications in the policies, practices or procedures of the public entity, or (4) failing to use alternative methods to avoid discrimination when all other options are not readily achievable, as per 42 CFR 42.521.

87.     It is further discriminatory to perform alterations to an existing facility that, do not to the maximum extent feasible, make the altered area accessible as per 42 CFR 42.522(a).

88.     Upon information and belief defendants, CITY OF NEW YORK and STATE OF NEW YORK, violated 504, by approving a certificate of occupancy in 1974, which was not in compliance with 504. The Unified Court System and the defendants receive federal funding.

89.     The 1974 CO is still in effect as, upon information and belief, the defendants have been unable to have an amended CO approved, since at least 2012. Thus, this is a continuing violation of 504.

90.     The allegations herein establish that plaintiff is a person with a qualified disability, that the defendants are subject to section 504 with reference to an existing facility and the altered areas of such facility, and that plaintiff has been discriminated against and denied meaningful access.

91.     The allegations herein also establish that plaintiff has been denied the benefits of and has been discriminated against a program receiving Federal financial assistance on numerous discrete times and dates. Defendants have run afoul of section 504 by failing to remove architectural barriers as such removal is necessary to prevent discrimination. Plaintiff's rights were violated under section 504 with reference to the same standards applicable to Title II and referenced herein and above.

92.     As such, plaintiff demands injunctive and monetary relief against **all of** the defendants in accordance with their violation of 504 and **deliberate indifference, inasmuch as the defendants knew of the accessibility issues alleged herein and did nothing about them, unreasonably subjecting the government to liability.**

## AS AND FOR A THIRD CAUSE OF ACTION –
## VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE XIV AMENDMENT
## TO THE UNITED STATES CONSTITUTION

**VII.** **THE CITY OF NEW YORK'S FAILURE AND THE STATE OF NEW YORK'S OFFICE OF COURT ADMINISTRATION'S FAILURE TO MAKE THE COURTHOUSE LOCATED AT 360 ADAMS STREET, BROOKLYN, NEW YORK, WHEELCHAIR ACCESSIBLE, VIOLATES THE EQUAL PROTECTION CLAUSE OF THE XIV AMENDMENT TO THE UNITED STATES CONSTITUTION (HEREINAFTER "EQUAL PROTECTION")**

93.     Plaintiff repeats and realleges those allegations of the complaint marked and designated herein as paragraphs "1" through "92" with the same force and effect as if herein set forth at length and further alleges that:

94.     Pursuant to Section 1 of the XIV Amendment: "No state shall…deny to any person within its jurisdiction the equal protection of the laws.

95.     Plaintiff, a fully-fledged attorney in a wheelchair, has been intentionally treated differently from other lawyers, that are similarly situated, and there is no rational basis for the different treatment.

96.     There is an extremely high degree of similarity between plaintiff and other fellow lawyers practicing in the courthouse at 360 Adams Street. Plaintiff performs each and every same task as any other lawyer. Plaintiff travels to court independently, attends calendar calls, participates in court conferences, argues motions, participates in hearings, selects juries, and conducts all aspects of full-blown trials. Plaintiff even transports/carries any and all required legal papers. Plaintiff is not given any special treatment or any less obligations/responsibilities that other lawyers, all of whom are similarly situated to the plaintiff.

97.     As such, no rational person could regard the circumstances of plaintiff to differ from those of a comparator fellow lawyer to a degree that would justify the different treatment on the basis of a legitimate government policy; there is no legitimate policy warranting the disparate treatment of an attorney in a wheelchair. Further, the similarity in circumstances of plaintiff and fellow lawyers, as indicated above and herein, are sufficient to exclude the possibility of any mistake by the defendants.

98.     Finally, plaintiff has been treated differently from other similarly situated lawyers based on the defendants intentional and/or purposeful discrimination by failing to remove architectural barriers, not providing meaningful access and not providing sufficient/proper reasonable accommodations.

99.     Plaintiff thus, alleges that the defendants have denied the plaintiff equal protection of the laws as described more fully herein **and violated Title II of the ADA and section 504**. As such, plaintiff demands injunctive and monetary relief against **all of** the defendants in accordance with the violation of plaintiff's Equal Protection rights **along with the ADA and section 504 violations as per** *United States v Georgia*.

## AS AND FOR A FOURTH CAUSE OF ACTION –
## VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW

**VIII.** THE CITY OF NEW YORK'S FAILURE TO MAKE THE COURTHOUSE LOCATED AT 360 ADAMS STREET, BROOKLYN, NEW YORK, WHEELCHAIR ACCESSIBLE, VIOLATES SECTION 296(2)(A) OF THE NEW YORK STATE HUMAN RIGHTS LAW (HEREINAFTER "STATE HRL")

100.    Plaintiff repeats and realleges those allegations of the complaint marked and designated herein as paragraphs "1" through "99" with the same force and effect as if herein set forth at length and further alleges that:

101.    Pursuant to section 296(2)(a) of the State HRL, "It shall be an unlawful discriminatory practice for any person...manager...agent or employee of any place of accommodation because of the disability of any person directly or indirectly to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities, or privileges therefor...or that the patronage or custom threat...of having a disability is unwelcome, objectionable, or not acceptable, desired or solicited."

102.    Discriminatory practices under the State HRL include (1) a refusal to remove architectural barriers in exiting facilities where such removal is readily achievable, (2) refusal to make reasonable modifications in policies, practices or procedures when same are necessary to avoid discrimination and (3) refusal to take such steps as are necessary to ensure that no individual with a disability is excluded or denied services because of the presence of auxiliary aids and services.

103.    It is submitted that the **CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF CITYWIDE ADMINSTRATIVE SERVICES, NEW YORK CITY DEPARTMENT OF BUILDINGS, LISETTE CAMILO, RICK CHANDLER, and IRA GLUCKMAN's ("City Defendants")** continued operation of 360 Adams Street and refusal to remove architectural barriers violates the State HRL. Indeed, the continued failure to remove such barriers presents the view that the defendants feel that having a disability is unwelcome, objectionable, or not acceptable, desired or solicited in the practice of law in general and in 360 Adams Street.

104.    As such, plaintiff demands injunctive and monetary relief against the **City** defendants in accordance with their violation of the State HRL.

## AS AND FOR A FIFTH CAUSE OF ACTION –
## VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW

IX.   THE CITY OF NEW YORK'S FAILURE TO MAKE THE COURTHOUSE LOCATED AT 360 ADAMS STREET, BROOKLYN, NEW YORK, WHEELCHAIR ACCESSIBLE, VIOLATES SECTION 8-107(4)(A) OF THE NEW YORK CITY HUMAN RIGHTS LAW (HEREINAFTER "CITY HRL")

105.   Plaintiff repeats and realleges those allegations of the complaint marked and designated herein as paragraphs "1" through "104" with the same force and effect as if herein set forth at length and further alleges that:

106.   Pursuant to section 8-107(4)(a) of the City HRL, "It shall be an unlawful discriminatory practice for any person...manager...agent or employee of any place of accommodation because of the disability of any person directly or indirectly to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities, or privileges therefor...or that the patronage or custom threat...of having a disability is unwelcome, objectionable, or not acceptable, desired or solicited.

107.   It is submitted that the **City** defendants in the continued operation of 360 Adams Street and refusal to remove architectural barriers violates the City HRL. Indeed, the continued failure to remove such barriers presents the view that the defendants feel that having a disability is unwelcome, objectionable, or not acceptable, desired or solicited in the practice of law in general and in 360 Adams Street.

108.   The required Notice upon the City Commission on Human Rights has or will be filed.

109.   As such, plaintiff demands injunctive and monetary relief against the **City** defendants in accordance with their violation of the City HRL.

## AS AND FOR A SIXTH CAUSE OF ACTION –
## INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS

X.    THE CITY OF NEW YORK'S CONTINUED FAILURE TO MAKE THE COURTHOUSE LOCATED AT 360 ADAMS STREET, BROOKLYN, NEW YORK, WHEELCHAIR ACCESSIBLE, CONSTITUTES AN INTENTIONAL INTERFERENCE WITH PLAINTIFF'S PRESENT AND FUTURE CONTRACTUAL RELATIONSHIPS AS A PRACTICING ATTORNEY

110.   Plaintiff repeats and realleges those allegations of the complaint marked and designated herein as paragraphs "1" through "109" with the same force and effect as if herein set forth at length and further alleges that:

111.   The plaintiff, a practicing attorney, conducts business in the Supreme Court building located at 360 Adams Street each and every week. Whenever the plaintiff arrives and

conducts business therein, it is pursuant to a valid contract between his legal employer or a retainer agreement with a client.

112. The **City** defendants continued unlawful discrimination interferes with the plaintiff's valid contracts in that he is prevented from fulfilling the full terms of said contracts, which include any and all duties required of any other practicing attorney. This would include, attending conference calls at JCP, conducting conferences at JCP, arguing motions, selecting juries, and conducting trials. However, many areas of the Court are simply not accessible and the plaintiff is preventing from fulfilling his contacts.

113. This is due to the intentional conduct and inaction of the defendants in refusing to remove the architectural barriers in 360 Adams Street.

114. A Notice of Claim relating to this alleged intentional tort **was filed on October 24, 2017**. However, the plaintiff avers that the torts herein are of a continuing nature as each and every time plaintiff performs attorney work in the courthouse, he is injured again and again. Any such Notice of Claim should be deemed timely, *nunc pro tunc*, as the defendants have actual notice of the instances alleged herein and would not be prejudiced in their defense. Otherwise, the plaintiff should be given leave to file such late notice of claim and that same should relate back to the commencement of this suit. Should the defendants insist on this condition precedent, the plaintiff reserves the right to recommence a proceeding relating to this intentional tort in State Court and then have same removed back to this instant Federal Action as there is valid supplemental subject matter jurisdiction. This should not be necessary as it is a waste of judicial resources.

115. The plaintiff is economically harmed by said intentional conduct, as the inability to fully perform the contracts will negatively impact his entitlement to promotions, raises, bonuses, and the continued retention of clients.

116. As such, plaintiff demands monetary relief against the **City** defendants in accordance with their intentional interference with plaintiff's present and future contractual relationships.

## AS AND FOR A SEVENTH CAUSE OF ACTON – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**XI.  THE CITY OF NEW YORK'S CONTINUED FAILURE TO MAKE THE COURTHOUSE LOCATED AT 360 ADAMS STREET, BROOKLYN, NEW YORK, WHEELCHAIR ACCESSIBLE, HAS RESULTED IN PLAINTIFF SUFFERING UNDUE EMOTIONAL DISTRESS, DUE TO THE INTENTIONAL FAILURE OF THE DEFENDANTS TO MAKE THE COURTHOUSE ACCESSIBLE**

117. Plaintiff repeats and realleges those allegations of the complaint marked and designated herein as paragraphs "1" through "116" with the same force and effect as if herein set forth at length and further alleges that:

118.    It should be noted that having to write the above facts in this public summons and complaint is humiliating and shocks the conscience.

119.    A Notice of Claim relating to this alleged intentional tort **was filed on October 24, 2017**. However, the plaintiff avers that the torts herein are of a continuing nature as each and every time plaintiff performs attorney work in the courthouse, he is injured again and again. Any such Notice of Claim should be deemed timely, *nunc pro tunc*, as the defendants have actual notice of the instances alleged herein and would not be prejudiced in their defense. Otherwise, the plaintiff should be given leave to file such late notice of claim and that same should relate back to the commencement of this suit. Should the defendants insist on this condition precedent, the plaintiff reserves the right to recommence a proceeding relating to this intentional tort in State Court and then have same removed back to this instant Federal Action as there is valid supplemental subject matter jurisdiction. This should not be necessary as it is a waste of judicial resources.

120.    As such, plaintiff demands monetary relief against the **City** defendants in accordance with their intentional infliction of emotional distress, whether directly or vicariously based upon the actions of their employees, agents, and managers.

## AS AND FOR A EIGHTH CAUSE OF ACTION – HUMILIATION

**XII.    THE CITY OF NEW YORK'S CONTINUED FAILURE AND THE STATE OF NEW YORK'S OFFICE OF COURT ADMINISTRATION'S CONTINUED FAILURE TO MAKE THE COURTHOUSE LOCATED AT 360 ADAMS STREET, BROOKLYN, NEW YORK, WHEELCHAIR ACCESSIBLE, HAS RESULTED AND WILL CONTINUE TO RESULT IN HUMILIATION SUFFERED BY THE PLAINTIFF**

121.    Plaintiff repeats and realleges those allegations of the complaint marked and designated herein as paragraphs "1" through "120" with the same force and effect as if herein set forth at length and further alleges that:

122.    As indicated above, the events of August 17, 2016, October 2016, November 15, 2016, on December 2 and 12, 2016, January 19 and 27, 2017, July 20, 2017, August 4, 11, and 16, 2017, September 7, 11, 25, 26, and 27, 2017, and October 4, 5, and 16, 2017 were humiliating.

123.    As such, plaintiff demands monetary relief against the defendants in accordance with their humiliation of the plaintiff **based on their violations of the ADA, section 504 and Equal Protection.**

## AS AND FOR A NINTH CAUSE OF ACTION –
## DEMAND FOR COMPENSATORY DAMAGES IN AN
## AMOUNT EXCEEDING ONE MILLION DOLLARS

**XIII.** THE DEFENDANTS HAVE DAMAGED PLAINTIFF IN A SUM EXCEEDING **$1,000,000**
AND PLAINTIFF IS ENTITLED TO COMPENSATORY DAMAGES FOR SAME

124.    Plaintiff repeats and realleges those allegations of the complaint marked and
designated herein as paragraphs "1" through "123" with the same force and effect as if herein set
forth at length and further alleges that:

125.    The **State of New York, Office of Court Administration, Ronald Younkins,
and the City** defendants' violations of the Federal **disability laws (ADA and section 504) and
Equal Protection, and the City Defendants' violation of** State, and City disability laws, have
adversely affected the plaintiff to the extent that he is discriminated against and his contractual
relationships have been intentionally interfered with, he has suffered emotional distress from the
intentional acts of the defendants, and is consistently humiliated by the defendants.

126.    As such plaintiff demands judgment in an amount exceeding one million dollars
**based on the inconvenience, mental anguish, reputation harms, economic harms,
humiliation, and embarrassment.**

## AS AND FOR A TENTH CAUSE OF ACTION –
## DEMAND FOR COSTS AND DISBURSEMENTS

**XIV.** THE DEFENDANTS' INACTION AND UNLAWFUL DISCRIMINATORY CONDUCT HAS
REQUIRED PLAINTIFF TO COMMENCE THE INSTANT ACTION, REQUIRING
DEFENDANTS TO PAY FOR ANY AND ALL COSTS AND DISBURSEMENTS INCURRED BY
PLAINTIFF IN BRINGING AND PROSECUTING SAID ACTION

127.    Plaintiff repeats and realleges those allegations of the complaint marked and
designated herein as paragraphs "1" through "126" with the same force and effect as if herein set
forth at length and further alleges that:

128.    Pursuant to 42 U.S.C. 12205 **and the corresponding provisions of section 504,**
plaintiff is entitled to recover all reasonable costs, disbursements, and expenses sustained as a
result of bringing and prosecuting this action.

129.    As such, plaintiff demands judgment including all reasonable costs,
disbursements, and expenses incurred from this action.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION –
## DEMAND FOR ATTORNEY'S FEES

XV. **THE DEFENDANTS' INACTION AND UNLAWFUL DISCRIMINATORY CONDUCT HAS REQUIRED PLAINTIFF TO COMMENCE THE INSTANT ACTION, REQUIRING DEFENDANTS TO PAY FOR ANY AND ALL ATTORNEY'S FEES IN BRINGING AND PROSECUTING SAID ACTION**

130.    Plaintiff repeats and realleges those allegations of the complaint marked and designated herein as paragraphs "1" through "129" with the same force and effect as if herein set forth at length and further alleges that:

131.    Pursuant to 42 U.S.C. 12205, **and the corresponding provisions of section 504,** plaintiff is entitled to a reasonable attorney's fee.

132.    As such, plaintiff demands judgment including a reasonable attorney's fee.

**WHEREFORE,** the plaintiff demands judgment against the defendants, with an Order granting:

A.  Injunctive relief, requiring the Defendants to Removal Structural and Architectural Barriers and Make the Courthouse Located at 360 Adams Street, Brooklyn, New York, Wheelchair Accessible, With Respect to its Lavatories, Courtrooms, Conference Rooms, Chambers, Paths of Travel, and all Other Areas Constituting Public Accommodations;

B.  Compensatory damages in an amount exceeding $1,000,000;

C.  Requiring the defendants to pay the plaintiff's costs and disbursements in commencing and prosecuting this action; and

D.  Requiring the defendants to pay the plaintiff's attorney's fees in commencing and prosecuting this action.

January 3, 2018

Dated: December 12, 2017                          /s/ Caner Demirayak
         Massapequa, New York                     Caner Demirayak, Esq.
                                                   Plaintiff Attorney *Pro Se*
                                                   15 Sheep Pasture Lane
                                                   Massapequa, New York
                                                   11758 cjohnd@me.com
                                                   516-765-0570

TO:    Agnetha Elizabeth Jacob, Esq.
        NYC Law Department
        100 Church Street

New York, New York, 10007
212-356-0881
ajacob@law.nyc.gov

Carly Weinreb, Esq.
New York State Office of the Attorney General
120 Broadway
New York, New York 10271
212-416-8577
carly.weinreb@ag.ny.gov

John Joseph Sullivan, Esq.
Assistant Deputy Counsel
NYS Office of Court Administration
Agency Building, 20th Floor
4 Empire State Plaza
Albany, New York 12223
518-474-7469
jjsulliv@courts.state.ny.us